UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-cv-20038-MORENO/OTAZO-REYES

ANNE BATCHELOR-ROBJOHNS, DANIEL
J. FERRARESI and FATHER PATRICK
O'NEILL as Co-Personal Representatives of the
ESTATE OF GEORGE BATCHELOR

       Plaintiffs,

v.

UNITED STATES OF AMERICA

       Defendant.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I

THIS CAUSE came before the Court upon Plaintiffs Anne Batchelor-Robjohns, Daniel J. Ferraresi and Father Patrick O'Neill as Co-Personal Representatives of the Estate of George Batchelor's (collectively, "Plaintiffs" or the "Estate") Motion for Summary Judgment as to Count I of the Complaint (hereafter, "Motion") [D.E. 21]. This case was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 17]. The undersigned held a hearing on the Motion on February 1, 2013. Upon a thorough review of the parties' written submissions and full consideration of their oral arguments, the undersigned respectfully recommends that the Estate's Motion be DENIED.

## I. PROCEDURAL BACKGROUND

George Batchelor ("Batchelor") died on July 29, 2002. Plaintiffs are co-personal representatives of the Estate of George Batchelor (the "Estate"). In its Complaint, the Estate

seeks refunds of income taxes paid by Batchelor for the 1999 tax year (Count I) and the 2000 tax year (Count II) and by the Estate for the 2005 tax year (Count III) [D.E. 1].  The Estate brings this action against Defendant United States of America ("United States," "the government," or "Defendant") pursuant to 28 U.S.C. § 1346(a)(1), alleging that it has paid the taxes at issue for the 1999, 2000 and 2005 tax years and filed claims for tax refunds that have been denied by the Internal Revenue Service ("IRS").[1]

Count I relates to the tax treatment of proceeds from Batchelor's sale of his interests in International Air Leases ("IAL") in his 1999 income tax return.  In this count, the Estate seeks a refund of the approximately $6.7 million (plus statutory interest) it paid pursuant to a tax deficiency notice issued by the IRS on the basis that certain "Option Assets" involved in the sale of IAL were not accurately valued by the parties to the transaction.  In its Motion, the Estate contends that res judicata precludes the United States from defending against this claim. According to the Estate, its tax refund claim arises out of the same facts and transactions that were already litigated by the parties in a prior case in this district, namely, U.S. v. Batchelor-Robjohns, Case No. 03-20164-Civ-UU (hereafter "Batchelor I"), which resulted in the entry of summary judgment in favor of the Estate.  Essentially, the Estate is invoking offensive res judicata against the United States in order to prevail on Count I as a matter of law.

In Count III, the Estate seeks a refund of approximately $8.3 million plus statutory interest on its 2005 income tax return for certain settlement payments it made in that tax year.

---

[1] Title 28, United States Code, Section 1346(a)(1) provides that the district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).

By separate Report and Recommendation, the undersigned is recommending that the United States' Motion for Summary Judgment as to Count III [D.E. 36] be granted.

In Count II, the Estate seeks a tax refund of approximately $700,000 plus statutory interest relating to an adjustment made by the IRS to Batchelor's income tax return for the year 2000. Neither side has sought summary judgment as to Count II.

## II.  PRIOR LITIGATION BETWEEN THE PARTIES

### 1.  *Batchelor I:*

In Batchelor I, the United States alleged that Batchelor, as transferee of various assets of IAL, was responsible for a portion of the unpaid federal corporate income tax liabilities of IAL and demanded that the Estate, as successor in interest to Batchelor, pay these purported tax liabilities. Specifically, the United States alleged that the remuneration received by Batchelor from the sale of his IAL stock to a third party in February 1999 constituted excess consideration and rendered IAL insolvent. In making this contention, the United States claimed that the actual value of certain "Option Assets" involved in the sale of IAL was higher than the amount agreed upon by the parties to the stock transaction.[2]  On October 31, 2005 (entered on docket on November 2, 2005), the Honorable Ursula Ungaro, United States District Judge, granted summary judgment in favor of the Estate after concluding that the United States was unable to meet its burden of demonstrating IAL's insolvency because all of its experts had been stricken for failure to comply with the expert disclosure requirements governing that case. As a result, Judge Ungaro found no need to resolve the issue of whether Batchelor received consideration in excess of the value of his IAL stock in connection with the "Option Assets."

### 2.  *Batchelor II:*

In U.S. v. Batchelor-Robjohns, Case No. 04-22800-Civ-UU (hereafter, Batchelor II), the

---

[2]  The "Option Assets" at issue in Batchelor I are the same "Option Assets" at issue in this case.

United States made similar allegations as in <u>Batchelor I</u>, namely, that Batchelor, as transferee of various assets of IAL, was responsible for a portion of the unpaid federal corporate income tax liabilities of IAL; and demanded that the Estate, as successor in interest to Batchelor, pay these purported tax liabilities.  On March 4, 2005, Judge Ungaro stayed the case until further order of the Court.  On May 16, 2006, after Judge Ungaro had entered final judgment in <u>Batchelor I</u>, the parties stipulated to dismissal with prejudice of <u>Batchelor II</u>.

### 3. *Batchelor III:*

On November 5, 2004, the United States filed a Statement of Claim in the Batchelor probate case for unpaid personal federal income tax liabilities of Batchelor for the years 1999 and 2000, to which an objection was filed on December 3, 2004.  Thereafter, on December 17, 2004, the government commenced <u>U.S. v. Batchelor-Robjohns</u>, Case No. 04-23173-Civ-Graham (hereafter, <u>Batchelor III</u>).  The United States' claims for tax payments in <u>Batchelor III</u> are essentially the mirror image of the claims for refund asserted by the Estate in Counts I and II of this action.  On July 29, 2005, the United States and the Estate filed a Stipulation for Dismissal without Prejudice, wherein the United States acknowledged that the Estate had by then paid the asserted tax liabilities underlying the action and that the Estate had the right to bring a refund claim under the applicable provisions of the tax code.

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact <u>and</u> the movant is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a) (emphasis added).  In this case, while the material facts are undisputed, the undersigned concludes that the Estate is not entitled to a judgment as a matter of law on Count I of the Complaint.

## IV.  UNDISPUTED MATERIAL FACTS

1.      In her October 31, 2005 Order Granting Defendants' Motion for Summary Judgment in <u>Batchelor I</u>, Judge Ungaro characterized the United States' claim in that case as follows:

> Pursuant to the Third Amended Complaint, Plaintiff claims that IAL owes an aggregate accrued unpaid federal corporate income tax liability totaling $91,020,281.26 for its taxable years ending March 31, 1989, March 31, 1994, March 31, 1999 and March 31, 2000. (3rd Amend. Compl. ¶ 17 .) Plaintiff also claims that, although IAL's income tax for its taxable year ending March 31, 1988 has been satisfied in full, it owes an accrued failure to pay penalty with respect to that liability in the amount of $200.34 and accrued unpaid interest with respect to that liability in the amount of $827,797.22, both amounts being computed through February 13, 2002.  Plaintiff further claims that the Batchelor Option Contract and the Fine Air Transaction rendered IAL insolvent and, therefore, Batchelor, as transferee for the tax period ending December 31, 1999, owes Plaintiff a total of $109,300,817.93, including interest computed to April 3, 2003, which amount the personal representatives of his estate have failed to pay.

Exh. A to Plaintiffs' Statement of Undisputed Material Facts [D.E. 22-1, at 12].[3]  On December 8, 2005, Judge Ungaro entered Final Judgment against Plaintiff and in favor of Defendants pursuant to her Order Granting Defendants' Motion for Summary Judgment [D.E. 322 in <u>Batchelor I</u>].

2.      In <u>Batchelor I</u>, the United States sued the Estate for transferee tax liability.  That claim arose out Batchelor's 1999 sale of his company, IAL, and the subsequent transfer of assets to Batchelor as partial payment for IAL.  Plaintiffs' Statement of Undisputed Material Facts [D.E. 22 at ¶ 2]; United States Statement of Material Facts in Dispute and Statement of Facts in Opposition [D.E. 24 at ¶ 2].

3.      To prevail on its transferee liability claim in <u>Batchelor I</u>, the United States was

---

[3]   The "Batchelor Option Contract" refers to the terms of the agreement whereby Batchelor sold his interests in IAL, including the provisions pertaining to the "Option Assets" whose valuation was at issue in <u>Batchelor I</u> and is at issue in this case.  The "Fine Air Transaction" is a related agreement that is not at issue here.

required to prove the value of IAL (that IAL was insolvent) and the value of the assets transferred to Batchelor as partial payment for IAL.  [D.E. 22 at ¶ 3]; [D.E. 24 at ¶ 3].

4.      Judge Ungaro struck the United States' valuation experts in Batchelor I, finding that the United States had failed to timely comply with its Rule 26, Fed.R.Civ.P., expert disclosure obligations.  [D.E. 22 at ¶ 4]; [D.E. 24 at ¶ 4].

5.      As a result of its experts being stricken, the United States could not prove its case, and Judge Ungaro accordingly entered summary judgment in favor of the Estate in Batchelor I.  [D.E. 22 at ¶ 5]; [D.E. 24 at ¶ 5].

6.      After the deadline to add claims in Batchelor I had passed, but before the Court entered summary judgment for the Estate in Batchelor I, the United States made a tax assessment against the Estate for $6,715,045, including interest, in additional personal income taxes based on a re-evaluation of certain assets that Batchelor received as partial payment for IAL.  [D.E. 22 at ¶ 6]; [D.E. 24 at ¶ 6].[4]

7.      The United States contended that those assets transferred to Batchelor as payment for IAL had a higher market value than the value that Batchelor and the purchaser of IAL had agreed to and Batchelor had reported on his tax return.  As a result the IRS contended that the Estate was required to pay additional personal income taxes on the difference.  The Estate paid the $6,715,045, and subsequently sought a refund of that same amount from the IRS.  [D.E. 22 at ¶ 7]; [D.E. 24 at ¶ 7].

8.      The IRS denied the Estate's claim for refund, and the Estate filed this action.  Count I seeks the refund of the $6,715,045 paid by the Estate.  [D.E. 22 at ¶ 8]; [D.E. 24 at ¶ 8].

9.      After an audit of Batchelor's tax return for 1999, the IRS determined that he had underreported the value of the "Option Assets," and thus his capital gains, for the 1999 tax year.

[4] These are the "Option Assets" at issue in Batchelor I and in this case.

[D.E. 24 at ¶ 9]; Plaintiffs' Reply Statement of Undisputed Material Facts [D.E. 31 at ¶ 9].[5]

       10.     On April 29, 2005, the IRS issued a Notice of Deficiency to the Estate for the 1999 tax year.  [D.E. 24 at ¶ 10]; [D.E. 31 at ¶ 10].

       11.     Ninety days after the issuance of the Notice of Deficiency fell on July 28, 2005, as reflected on the Notice of Deficiency.  [D.E. 24 at ¶ 11]; [D.E. 31 at ¶ 11].

       12.     On September 6, 2005, a delegate of the Secretary of the Treasury assessed an income tax deficiency in the amount of $4,853,195 against Batchelor for the 1999 tax year. [D.E. 24 at ¶ 12]; [D.E. 31 at ¶ 12].

       13.     Batchelor I was filed on January 24, 2003 and the deadline for filing amendments to the pleadings in that case was April 2, 2004.  [D.E. 24 at ¶ 14]; [D.E. 31 at ¶ 14].

## V.  LEGAL PRINCIPLES

### 1.  *General principles of res judicata and collateral estoppel*

"Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding."  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999). "Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."  Id.  As further explained by the Ragsdale court:

> In the Eleventh Circuit, the principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form.  It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the

---

[5]  As to facts 9-13, which were submitted by the United States in opposition to the Motion, the Estate contends that they are irrelevant but nevertheless admits that there is no factual dispute as to them.

same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of res judicata.

Id. at 1239.

In contrast to res judicata, "[c]ollateral estoppel prevents a party who previously had a full and fair opportunity to litigate an issue actually litigated and decided as a necessary part of a prior judgment from challenging that same issue again." Garcon v. Van Reeth, No. 12-10880, 2013 WL 781805, at *3 (11th Cir. Mar. 4, 2013) (citing CSX Transp., Inc. v. Brotherhood of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir.2003)).

## 2. *Res judicata and collateral estoppel in the federal tax field*

In Comm'r v. Sunnen, 333 U.S. 591 (1948), the United States Supreme Court explained how the principles of res judicata apply to the federal tax field. According to the Supreme Court:

> Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year.

Id. at 598. In Finley v. U.S., 612 F.2d 166 (5th Cir. 1980), the Fifth Circuit Court of Appeals expanded on this concept, stating:

> In federal tax litigation one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation. As in any other area, res judicata bars subsequent litigation of a previously adjudicated cause of action, including those claims and defenses that could have been, but were not, raised in the earlier proceeding. All such issues are considered to have merged into the prior judgment.

Id. at 170 (citing Sunnen, 333 U.S. at 598).[6]

---

[6] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Thus, the general rule for res judicata is that "the tax liability of a particular tax for a particular taxable year is a single cause of action." U.S. v. Davenport, 484 F.3d 321, 326 (5th Cir. 2007) (citing 15 Elizabeth K. Berman, Mertens Law of Federal Income Taxation § 60:33 (2000)).[7]  A simple application of this principle is found in Georges v. U.S., No. 90-8434-Civ, 1992 WL 95040 (S.D. Fla. Jan. 13, 1992).  In Georges, the court dismissed as barred by res judicata a taxpayer's claim for the return of federal income tax collected from him during the years 1977 through 1985 because he had already litigated a prior action wherein he claimed that the IRS had erred in assessing his federal income tax liabilities for those same years. Id. at *1-2.

The Supreme Court also explained in Sunnen how the doctrine of collateral estoppel operates in the federal tax field:

> But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit.  Collateral estoppel operates, in other words, to relieve the government and the taxpayer of redundant litigation of the identical question of the statute's application to the taxpayer's status.

Id. at 598-99.

### 3. *The scope of res judicata*

In addition to the four Ragsdale factors, application of res judicata requires consideration of "whether the claim in the new suit was or could have been raised in the prior action." In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001).  As stated by the Eleventh Circuit in Manning v. City of Auburn, 953 F.2d 1355 (11th Cir.1992):

> The scope of litigation is framed by the complaint at the time it is filed.  The rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.  Put differently, we do not believe that the res judicata preclusion of claims that "could have been brought" in the

---

[7] See also 15 Elizabeth K. Berman, Mertens Law of Federal Income Taxation § 60:33 (2013) (same).

earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action.

Id. at 1360.

### 4. *The statutory procedures governing tax assessments*

If the IRS determines that there is a tax deficiency, it is "authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." 26 U.S.C. § 6212(a). Upon receiving a notice of deficiency, the taxpayer has 90 days from the mailing date "to file a petition with the Tax Court for a redetermination of the deficiency." 26 U.S.C. § 6213(a). The IRS may not make an assessment of a deficiency and may not initiate a levy or proceeding in court for its collection until 90 days after mailing the notice of deficiency. Id. Moreover, this prohibition is extended through the conclusion of the Tax Court proceedings if the taxpayer files a petition for redetermination with the Tax Court within the 90 day period. Id.

### 5. *Ripeness of collection claims by the IRS*

A claim by the IRS to collect a purported tax deficiency does not ripen into an enforceable claim until an assessment has been made, which can only occur 90 days from mailing of a notice of deficiency or upon the conclusion of Tax Court proceedings. Crocker v. U.S., 323 F. Supp. 718, 724 (N.D. Miss. 1971) (because an assessment had not been made, the government could not assert a compulsory or permissive counterclaim against taxpayers who had brought a refund action in district court). See also Pfeiffer Co. v. U.S., 518 F.2d 124, 129-30 (8th Cir. 1975) ("The Government's assertion of deficiency against taxpayer for the additional $44,877.39 in taxes did not ripen into an enforceable claim for relief . . . until the statutory tax assessment was entered. By statute that assessment, except in the case of jeopardy assessment,

could not be accomplished until 90 days after the notice of deficiency was issued.").[8]

## VI. DISCUSSION

The Estate has the burden of showing that Count I is barred by res judicata.  In re Piper, 244 F.3d at 1296 ("At all times the burden is on the party asserting res judicata . . . to show that the after-filed suit is barred.").  Therefore, the Estate must establish: (1) that Judge Ungaro's Order Granting Defendants' Motion for Summary Judgment and the Final Judgment she entered pursuant to that Order constitute a final judgment on the merits; (2) that the decision was rendered by a court of competent jurisdiction; (3) that the parties in Batchelor I and this action are identical; and (4) that the same cause of action is involved in Batchelor I and Count I. Ragsdale, 193 F.3d at 1238.  Additionally, the Estate must establish that the United States' tax liability claim was or could have been brought in Batchelor I.  In re Piper, 244 F.3d at 1296; Manning, 953 F.2d at 1360.

According to the Estate, the United States has conceded that the second and third Ragsdale factors are satisfied.  See Motion at 12.  Further, the Estate contends that the first factor is met, citing U.S. v. One Colt Python .357 Cal. Revolver, 845 F.2d 287, 289 (11th Cir. 1988), for the proposition that "the disposition of a case on summary judgment grounds represents a final decision on the merits and forecloses subsequent litigation."  See Motion at 12.  The undersigned agrees that this factor is also met, even though the summary judgment entered in Batchelor I was predicated on the United States' inability to prove its case.  See Undisputed Material Fact No. 5; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (Summary judgment is proper when there is a failure of proof with respect to the non-moving party's case.).  Moreover, in its response memorandum, the United States did not address the Estate's argument

---

[8]   Jeopardy assessments are authorized without regard to the 90 day waiting period prescribed in 26 U.S.C. § 6213 if the IRS believes that the assessment or collection of a deficiency "will be jeopardized by delay."  26 U.S.C. § 6861(a).

as to the first Ragsdale factor and only contends that the Estate cannot satisfy the fourth factor and the requirement that a claim representing the mirror image of Count I could have been brought in Batchelor I.  See United States' Response in Opposition to Plaintiffs' Motion for Summary Judgment on Count I (hereafter, "Response") [DE. 23 at 5.]   Therefore, the undersigned concludes that the first three Ragsdale factors have been satisfied.

Based on the foregoing, the undersigned's task is limited to determining: (1) whether there is identity of causes of action between Batchelor I and Count I so that the fourth Ragsdale factor is satisfied; and (2) whether a claim for Batchelor's personal income tax liability (which is the subject of Count I) could have been brought in Batchelor I.  Applying the legal principles discussed above to the undisputed facts, the undersigned concludes that neither of these requirements is met because: (1) the claims in Batchelor I and Count I relate to different taxes and different tax years; and (2) the 90-day statutory period for bringing a claim arising from Batchelor's personal income tax liability had not yet expired at the time Batchelor I commenced.

In making this determination, the undersigned has considered, but is not persuaded, by the Estate's arguments that the difference in tax and tax years should be disregarded and that the United States is precluded from making a ripeness argument based on the 90-day statutory period by the so-called "doctrine of chutzpah" due to its own dilatory conduct.  While the undersigned is mindful of the Estate's indignant contention that a denial of its Motion will, for all practical purposes, give the United States "a second bite" of the proverbial apple, this result is unavoidable given the inapplicability of collateral estoppel, which is the doctrine that could prevent such result.  Here, collateral estoppel does not bar the United States from defending against Count I because Judge Ungaro did not reach the merits of the common issue between Batchelor I and Count I, namely, the correct valuation of the "Option Assets."

### 1. *No identity of causes of action*

Under <u>Sunnen</u>, <u>Finley</u> and <u>Davenport</u>, the tax and tax year must be the same for the res judicata requirement of a single cause of action to be satisfied. <u>Sunnen</u>, 333 U.S. at 598; <u>Finley</u>, 612 F.2d at 170; <u>Davenport</u>, 484 F.3d at 326.   In this case, the undisputed facts clearly establish that different taxes and tax years are involved in <u>Batchelor I</u> and Count I.  In <u>Batchelor I</u>, the United States sought to recover unpaid federal corporate income tax liabilities of IAL for IAL's tax years ending March 31, 1989, March 31, 1994, March 31, 1999 and March 31, 2000, plus a failure to pay penalty for IAL's tax year ending March 31, 1988.  <u>See</u> Undisputed Fact No. 1. The United States did so by suing the Estate, as successor in interest to Batchelor, and contending that Batchelor was responsible for the payment of those federal corporate income tax liabilities of IAL as transferee of various assets of IAL.  <u>See</u> Undisputed Facts Nos. 1 & 2.  By contrast, the purported overpayment as to which the Estate, as successor in interest to Batchelor, seeks a refund in Count I pertains to Batchelor's federal personal income tax return for the year 1999.  <u>See</u> Complaint at ¶ 50 ("Mr. Batchelor timely filed his income tax return for the calendar year 1999."); <u>id.</u> at ¶ 55 ("The IRS's 1999 adjustments increased Mr. Batchelor's income tax for 1999."); <u>id.</u> at ¶ 61 ("Plaintiffs have made an overpayment of Federal income taxes for the calendar year 1999.").  Because there is a difference in the taxes and tax years, there is no single, unified cause of action encompassing <u>Batchelor I</u> and Count I.  <u>Sunnen</u>, 333 U.S. at 598; <u>Finley</u>, 612 F.2d at 170; <u>Davenport</u>, 484 F.3d at 326.  As a result, the requirement for the application of res judicata that the same cause of action be involved in both cases is not met.

The Estate relies on <u>Davenport</u> in support of its contention that offensive res judicata must apply to Count I because the transferee tax claim in <u>Batchelor I</u> and the direct tax claim in Count I arose from the same transaction.   In <u>Davenport</u>, the tax court determined that a

decedent's estate was liable for unpaid gift tax, decided the value of the stock that had been gifted by the decedent, and computed the tax liability. Id. at 325. After the estate did not pay the gift tax, the government brought an action to recover *that same tax* from one of the donees as transferee of the gift. Id. at 322. The Davenport court found that offensive res judicata barred the donee from challenging the amount of his liability in the collection action, given that the same cause of action was involved in both cases. Id. at 327. This was because, "[o]nce a court determines the tax liability of the transferor, the decision is res judicata of the liability with regard to the transferee *for the same tax* if transferee status can be established." Id. at 328 (citing 14 Edward J. Smith, Mertens Law of Federal Income Taxation § 53:31 (2004)) (emphasis added). In contrast, there is no identity of tax between Batchelor I and Count I, because the former involved the corporate tax liability of IAL and the latter involves Batchelor's personal income tax liability. For this reason, the Estate's Motion should be denied.

### 2. *Ripeness*

In addition to its failure to meet the fourth Ragsdale factor, the Estate cannot establish that the government's tax liability claim was or could have been brought in Batchelor I. Initially, it is clear from the recitation of the United States' case in Judge Ungaro's October 31, 2005 Order Granting Defendants' Motion for Summary Judgment that such a claim was not brought in Batchelor I either at the time the action commenced on January 24, 2003 or by the April 2, 2004 deadline for amendment of the pleadings. See Undisputed Fact Nos. 1 & 13. Therefore, the issue for consideration is simply whether the claim could have been brought in Batchelor I. The undisputed facts in this regard are that on April 29, 2005, after having audited Batchelor's 1999 tax return, the IRS issued its Notice of Deficiency; and that the 90-day statutory waiting period expired on July 28, 2005. See Undisputed Facts Nos. 9-11. Hence, the earliest date on which

the IRS could have made a tax assessment and brought the claim that is the mirror image of Count I was July 29, 2005.  See 26 U.S.C. § 6213(a); Crocker, 323 F. Supp. at 724; Pfeiffer, 518 F.2d at 129-30.  This date was well past the January 24, 2003 filing date of Batchelor I and the April 2, 2004 deadline for amendment of pleadings in that case.  Because the ripeness requirement for application of res judicata is not met, the Estate's Motion should be denied for this additional reason.[9]

As noted above, the Estate argues that the so-called "doctrine of chutzpah" precludes the government from relying on the 90-day statutory period to avoid the effects of res judicata due to its own dilatory conduct.  According to the Estate, the government

> had the power, right, and ability to notify the Batchelor Estate long before the **April, 2004** deadline (14 months after the case was filed, two years after IAL's bankruptcy, and five years after the transaction) for adding claims in *Batchelor I*. . . .  There was no bar to serving the Notice of Deficiency other than the government's own delay in completing its own investigation and obtaining its own reports.  The government's contention that it could not bring the personal tax claim before 2004 because it had not yet issued a deficiency notice is thus legally meaningless.  It does, however, remind one of the legal definition of *chutzpah*."

See Plaintiffs' Summary Judgment reply Brief [D.E. 30 at 4].  The Estate is essentially arguing that the government has "unclean hands."  U.S. v. Kresler, 392 Fed. Appx. 765, 770 (11th Cir. 2010) ("chutzpah" is analytically similar to "unclean hands").  But the equitable defense of "unclean hands" plays no role in the determination of when the government could have brought the claims in Batchelor I under the provisions of the tax code.  Jeffries v. Comm'r, 158 F.2d 225, 226 (5th Cir. 1947) ("Whether a transaction or result is taxable and what the tax is is not a matter

---

[9]  In Batchelor III, which was brought on December 17, 2004, the Estate argued for dismissal because the 90-day period had not yet expired.  See Estate's Reply in Support of its Motion to Dismiss [D.E. 8 in Batchelor III].  The case became moot after the parties filed a stipulation of dismissal on July 29, 2005, wherein the United States acknowledged that the Estate had by then paid the asserted tax liabilities underlying that action and that the Estate had the right to bring a refund claim under the applicable provisions of the tax code.  See *supra* Section II(3).  The IRS denied the Estate's refund claim and, as a result, the Estate commenced this action seeking a refund of the additional taxes it paid.  See Undisputed Fact No. 8.

to be determined in law upon considerations of general justice or equity.  It is a matter of statutes and valid regulations, and what they mean.").   Despite its fairness appeal, the Estate's "chutzpah" argument does not trump the ripeness requirement.

## VII.  CONCLUSION

Based on the foregoing considerations, the undersigned respectfully **RECOMMENDS** that Plaintiffs Anne Batchelor-Robjohns, Daniel J. Ferraresi and Father Patrick O'Neill as Co-Personal Representatives of the Estate of George Batchelor's Motion for Summary Judgment as to Count I of the Complaint [D.E. 21] be **DENIED.**

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge.  See Local Magistrate Rule 4(b).   Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at Miami, Florida, this 13th day of May, 2013.


_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


Copies provided to:
Chief United States District Judge Federico A. Moreno
Counsel of Record