UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-cv-20038-MORENO/OTAZO-REYES

ANNE BATCHELOR-ROBJOHNS, DANIEL
J. FERRARESI and FATHER PATRICK
O'NEILL as Co-Personal Representatives of the
ESTATE OF GEORGE BATCHELOR

    Plaintiffs,

v.

UNITED STATES OF AMERICA

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT AS TO COUNT III

THIS CAUSE came before the Court upon Defendant United States of America's ("United States," "the government" or "Defendant") Motion for Summary Judgment as to Count III of the Complaint (hereafter, "Motion") [D.E. 36]. This case was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 17]. The undersigned held a hearing on the Motion on February 1, 2013. Upon a thorough review of the parties' written submissions and full consideration of their oral arguments, the undersigned respectfully recommends that the United States' Motion be GRANTED.

### I. PROCEDURAL BACKGROUND

George Batchelor ("Batchelor") died on July 29, 2002. Plaintiffs Anne Batchelor-Robjohns, Daniel J. Ferraresi and Father Patrick O'Neill are the Co-Personal Representatives of

the Estate of George Batchelor (collectively, "Plaintiffs" or the "Estate"). In its Complaint, the Estate seeks refunds of income taxes paid by Batchelor for the 1999 tax year (Count I) and the 2000 tax year (Count II) and by the Estate for the 2005 tax year (Count III) [D.E. 1]. The Estate brings this action against the United States pursuant to 28 U.S.C. § 1346(a)(1), alleging that it has paid the taxes at issue for the 1999, 2000 and 2005 tax years and filed claims for tax refunds that have been denied by the Internal Revenue Service ("IRS").[1]

Counts I and II relate to the tax treatment of proceeds from Batchelor's sale of his interests in International Air Leases ("IAL") in his 1999 and 2000 income tax returns. Those Counts, wherein the Estate seeks refunds of approximately $6.7 million and $700,000 plus statutory interest, respectively, are not at issue in this Motion.[2] In Count III, the Estate seeks a refund of approximately $8.3 million plus statutory interest on its 2005 income tax return, pursuant to section 1341 of the Tax Code, for settlement payments it made in that tax year. The United States seeks summary judgment as to Count III on two independent grounds: (1) that the Estate's refund claim is barred by operation of sections 642(g), 691(b) and 461(h) of the Tax Code; and (2) that the Estate cannot satisfy the independent deduction requirement for application of section 1341 to its 2005 income tax return.

---

[1] Title 28, United States Code, Section 1346(a)(1) provides that the district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).

[2] By separate Report and Recommendation, the undersigned is recommending that the Estate's Motion for Summary Judgment as to Count I [D.E. 21], which is predicated on res judicata, be denied. Neither side has sought summary judgment as to Count II.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). In this case, the material facts are undisputed and the undersigned concludes that the United States is entitled to judgment as a matter of law on Count III of the Complaint.

## III. UNDISPUTED MATERIAL FACTS

1. Batchelor died on July 29, 2002 while a resident of Miami-Dade County, Florida. The Estate is still under administration in the local probate court with Plaintiffs acting as its co-personal representatives. United States Statement of Undisputed Facts [D.E. 36-2 at ¶ 2]; Estate's Response to United States Statement of Undisputed Facts [D.E. 41 at ¶ 2].

2. International Air Leases ("IAL") was an aviation company that bought, sold, repaired, serviced, and leased aircraft and aircraft parts. Prior to February 10, 1999, Batchelor was the sole shareholder of IAL. [D.E. 36-2 at ¶ 1]; [D.E. 41 at ¶ 1].

3. In 1998, Anthony Tirri ("Tirri") formed International Air Leases of P.R., Inc. ("IALPR"). Batchelor owned no stock in IALPR. [D.E. 36-2 at ¶ 13]; [D.E. 41 at ¶ 13].

4. On November 12, 1998, Batchelor and IALPR executed a stock purchase agreement to sell Batchelor's entire ownership interest in IAL to IALPR. On February 10, 1999, Batchelor and IALPR executed an Amended Stock Purchase Agreement which valued Batchelor's ownership interest in IAL at $502,181,641.00. [D.E. 36-2 at ¶ 14]; [D.E. 41 at ¶ 14].

5. Batchelor received the income from the sale of his interest in IAL over a two year period--1999 and 2000--and that income was reported in Batchelor's 1999 and 2000 federal income tax returns. [D.E. 36-2 at ¶ 15]; [D.E. 41 at ¶ 15].

6. On or about October 10, 2002, IAL sued the Estate seeking to set aside the sale of Batchelor's ownership interest in IAL to IALPR as a fraudulent transfer and seeking punitive damages (hereafter, the "IAL Lawsuit"). [D.E. 36-2 at ¶ 16]; [D.E. 41 at ¶ 16].

7. On or about October 18, 2002, IALPR filed a claim in the Estate probate proceedings seeking to recover damages under various legal theories arising from Batchelor's purportedly fraudulent conduct in the sale of IAL stock to IALPR (hereafter, the "IALPR Claim"). [D.E. 36-2 at ¶ 17]; [D.E. 41 at ¶ 17]; [D.E. 42-2 at 163-65].

8. On or about March 9, 1999, Linda Harrington, a shareholder of Rich International Airways ("Rich") filed a lawsuit against Batchelor, IAL and others (hereafter, the "Harrington Lawsuit"). Therein, Harrington asserted claims against Batchelor for breach of contract and tortious interference with contract in relation to his conduct after becoming a Rich shareholder in 1994 and with respect to a joint venture between Rich and IAL or one of its subsidiaries. [D.E. 36-2 at ¶¶ 3-8]; [D.E. 41 at ¶¶ 3-8].

9. On November 18, 1996, Rich filed a Chapter 11 bankruptcy petition and thereafter James Feltman ("Feltman") became the trustee of the Rich Liquidating Trust. On or about August 5, 1999, Feltman, as trustee, filed a lawsuit against Batchelor, which was later amended to include the Estate (the "Feltman Lawsuit"). Therein, Feltman alleged various claims against Batchelor arising from his involvement in Rich. [D.E. 36-2 at ¶ 10]; [D.E. 41 at ¶ 10].

10. Subsequently, Feltman asserted the same claims against IAL in the IAL bankruptcy proceedings (the "Feltman Bankruptcy Claim"), and a probate claim in the Estate probate proceedings (the "Feltman Probate Claim"). [D.E. 36-2 at ¶¶ 11-12]; [D.E. 41 at ¶¶ 11-12].

11. As of July 29, 2002, the date of Batchelor's death, the Harrington and Feltman

4

Lawsuits remained unresolved and the IAL Lawsuit and IALPR Claim had not yet been brought. Ultimately, Plaintiffs decided to settle all four matters. [D.E. 36-2 at ¶ 18]; [D.E. 41 at ¶ 18].

12. On October 4, 2002, the Estate entered into a settlement agreement with Linda Harrington whereby she would be paid $2 million in exchange for a general release and dismissal of the Harrington Lawsuit with prejudice. [D.E. 36-2 at ¶ 19]; [D.E. 41 at ¶ 19].

13. In December, 2002, the Estate agreed to pay Feltman $25 million as settlement for the Feltman Lawsuit. [D.E. 36-2 at ¶¶ 20-21]; [D.E. 41 at ¶¶ 20-21].

14. On or about August 28, 2003, the Estate agreed to pay IALPR $12 million to satisfy the IALPR Claim. [D.E. 36-2 at ¶ 23]; [D.E. 41 at ¶ 23].

15. On or about March 4, 2004, the Estate entered into a settlement agreement to pay IAL $1 million in exchange for dismissal with prejudice of the IAL Lawsuit. [D.E. 36-2 at ¶ 22]; [D.E. 41 at ¶ 22].

16. The Estate made the settlement payments for the Harrington Lawsuit, the Feltman Lawsuit, the IAL Lawsuit and the IALPR Claim in July 2004. [D.E. 36-2 at ¶ 24]; [D.E. 41 at ¶ 24].

17. On or about October 29, 2003, the Estate filed a Form 706, Federal Estate Tax Return ("Estate Tax Return") deducting from the gross estate as claims against the estate the settlement amounts for the Harrington Lawsuit ($2 million), the Feltman Lawsuit ($25 million) and the IALPR Claim ($12 million). The Estate did not deduct the settlement payment for the IAL Lawsuit ($1 million) and states that this was because of "mistake or otherwise." [D.E. 36-2 at ¶¶ 27-28]; [D.E. 41 at ¶¶ 27-28].

18. On or about September 14, 2006, the Estate filed a claim for an income tax refund for its 2005 tax year in the amount of $8,322,566.00 pursuant to 26 U.S.C. § 1341, based on the

settlement payments for the Harrington Lawsuit, the Feltman Lawsuit, the IALPR Claim and the IAL Lawsuit. The IRS denied the refund claim on June 3, 2010 [D.E. 36-2 at ¶¶ 31-32]; [D.E. 41 at ¶¶ 27-28].

## IV. RELEVANT TAX PROVISIONS

### 1. *Section 642(g)*

> Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction (or as an offset against the sales price of property in determining gain or loss) in computing the taxable income of the estate or of any other person, unless there is filed, within the time and in the manner and form prescribed by the Secretary, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. Rules similar to the rules of the preceding sentence shall apply to amounts which may be taken into account under section 2621(a)(2) or 2622(b). This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).

26 U.S.C. § 642(g).

Section 642(g) generally precludes the estate of a decedent from having the benefit of a double deduction by requiring it to make a choice between deducting an item from the gross estate for purposes of the estate tax or from the estate's gross income for purposes of the income tax, but not from both. Estate of Sutton, No. 2766, 1946 WL 6817 (Tax Ct. Mar. 21, 1946). But the last sentence of Section 642(g) makes that section inapplicable to deductions relating to "income in respect of decedents." 26 U.S.C. § 642(g). As explained in the Treasury Regulations, "Section 642(g) has no application to deductions for taxes, interest, business expenses, and other items accrued at the date of a decedent's death so that they are allowable as a deduction under section 2053(a)(3) for estate tax purposes as claims against the estate, and are also allowable under section 691(b) as deductions in respect of a decedent for income tax purposes." 26 C.F.R. § 1.642(g)-2. In contrast, "section 642(g) is applicable to deductions for

6

interest, business expenses, and other items not accrued at the date of the decedent's death." Id.

### 2. Section 691(b)

**Allowance of deductions and credit.**--The amount of any deduction specified in section 162, 163, 164, 212, or 611 (relating to deductions for expenses, interest, taxes, and depletion) or credit specified in section 27 (relating to foreign tax credit), in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his death, or a prior period, shall be allowed:

**(1) Expenses, interest, and taxes.**--In the case of a deduction specified in section 162, 163, 164, or 212 and a credit specified in section 27, in the taxable year when paid--

**(A)** to the estate of the decedent; except that

**(B)** if the estate of the decedent is not liable to discharge the obligation to which the deduction or credit relates, to the person who, by reason of the death of the decedent or by bequest, devise, or inheritance acquires, subject to such obligation, from the decedent an interest in property of the decedent.

**(2) Depletion.**--In the case of the deduction specified in section 611, to the person described in subsection (a)(1)(A), (B), or (C) who, in the manner described therein, receives the income to which the deduction relates, in the taxable year when such income is received.

26 U.S.C. § 691(b).

As explained in the Treasury Regulations, "deductions in respect of a decedent" are expenses, interest, and taxes "for which the decedent was liable, which were not properly allowable as a deduction in his last taxable year or any prior taxable year." 26 C.F.R. § 1.691(b)-1(a).

### 3. Section 461(h)

**Certain liabilities not incurred before economic performance.--**

**(1) In general.**--For purposes of this title, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs.

> **(2) Time when economic performance occurs.**--Except as provided in regulations prescribed by the Secretary, the time when economic performance occurs shall be determined under the following principles:
>
> **(A) Services and property provided to the taxpayer.**--If the liability of the taxpayer arises out of--
>
> **(i)** the providing of services to the taxpayer by another person, economic performance occurs as such person provides such services,
>
> **(ii)** the providing of property to the taxpayer by another person, economic performance occurs as the person provides such property, or
>
> **(iii)** the use of property by the taxpayer, economic performance occurs as the taxpayer uses such property.
>
> **(B) Services and property provided by the taxpayer.**--If the liability of the taxpayer requires the taxpayer to provide property or services, economic performance occurs as the taxpayer provides such property or services.
>
> **(C) Workers compensation and tort liabilities of the taxpayer.**--If the liability of the taxpayer requires a payment to another person and--
>
> **(i)** arises under any workers compensation act, or
>
> **(ii)** arises out of any tort,
>
> economic performance occurs as the payments to such person are made. Subparagraphs (A) and (B) shall not apply to any liability described in the preceding sentence.

26 U.S.C. § 461(h).

> According to the Treasury Regulations:
>
> ➢ "For purposes of determining whether an accrual basis taxpayer can treat the amount of any liability (as defined in § 1.446–1(c)(1)(ii)(B)) as incurred, the all events test is not treated as met any earlier than the taxable year in which economic performance occurs with respect to the liability." 26 C.F.R. § 1.461-4(a)(1).
>
> ➢ "The term 'liability' includes any item allowable as a deduction, cost, or expense for Federal income tax purposes." 26 C.F.R. § 1.461-1(c)(1)(ii)(B).
>
> ➢ "If the liability of a taxpayer requires a payment or series of payments to another person and arises under any workers compensation act or out of any tort, breach

8

of contract, or violation of law, economic performance occurs as payment is made to the person to which the liability is owed." 26 C.F.R. § 1.461-4(g)(2).

➢ "The term payment has the same meaning as is used when determining whether a taxpayer using the cash receipts and disbursements method of accounting has made a payment. Thus, for example, payment includes the furnishing of cash or cash equivalents and the netting of offsetting accounts." 26 C.F.R. § 1.461-4(g)(1)(ii)(A).

### 4. *Section 1341*

"Under the claim of right doctrine, a taxpayer must report taxable income in the year it is received." Reynolds Metals Co. v. U.S., 389 F. Supp. 2d 692, 695 (E.D. Va. 2005) (citing United States v. Lewis, 340 U.S. 590, 591 (1951)). "If during a subsequent tax year, a taxpayer discovered that he was not entitled to the previously claimed income, his only option was to claim a deduction in the year of repayment; the taxpayer was not permitted to recalculate his previous income and tax liability. An inequity resulted to the taxpayer when the deduction at a later year is taken at a lower tax rate." Reynolds, 389 F. Supp. 2d at 695. Congress enacted 26 U.S.C. § 1341 in 1954 to rectify this inequity. Id. at 696. The object of Section 1341 "is to put the taxpayer in the same position he would have been in had he not included the item as gross income in the first place." Fla. Progress Corp. v. I.R.S., 384 F.3d 954, 957 (11th Cir. 2003) (citing Dominion Resources, Inc. v. U.S., 219 F.3d 359, 363 (4th Cir. 2000)).

Section 1341 provides, in relevant part:

**(a) General rule.--**If--

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

9

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

**(4)** the tax for the taxable year computed with such deduction; or

**(5)** an amount equal to--

**(A)** the tax for the taxable year computed without such deduction, minus

**(B)** the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

26 U.S.C. § 1341(a). As explained by the Eleventh Circuit in Fla. Progress:

> The provision has three basic requirements. First, the item in question must have been included as gross income for a prior taxable year because "it appeared" that the taxpayer had an unrestricted right to such item. Second, the taxpayer must be able to deduct the item in the taxable year because it was established after the close of the prior taxable year that the taxpayer did not have an unrestricted right to such item. Finally, the amount of the putative deduction must exceed $3000. If these requirements are met, the taxpayer has two choices: he can deduct the item from the current year's taxes, or he can claim a tax credit for the amount his tax was increased in the prior year by including that item.

Fla. Progress, 348 F.3d at 957. Section 1341 "itself does not indicate whether a deduction should be allowable. That answer must be found in another provision of the code." Id. at 958. Thus, Section 1341 "is applicable only if another code section would provide a deduction for the item in the current year." Id. at 962.

## V. DISCUSSION

As noted above, the United States has moved for summary judgment as to Count III of the Complaint. The Estate alleges in Count III that it is entitled to a refund in the amount of $8.3 million for its 2005 income tax return by application of section 1341 to the settlement payments made in that tax year for the Harrington Lawsuit, the Feltman Lawsuit, the IALPR Claim and the IAL Lawsuit. The Estate claims that the settlement payments represent a reduction in the income

received by Batchelor for the sale of IAL stock, which income was declared by Batchelor in his 1999 and 2000 personal income tax returns, and that section 1341 permits it to recompute the income for those tax years by subtracting the settlement payments, thereby resulting in overpayment of the 1999 and 2000 taxes by $8.3 million.

It is undisputed that the Estate claimed the settlement payments for the Harrington Lawsuit, the Feltman Lawsuit and the IALPR Claim as deductions from the gross estate for estate tax purposes. It is also undisputed that the Estate did not claim such a deduction for the settlement payment for the IAL Lawsuit. But the government contends that the Estate did not file a waiver of the right to make such claim for estate tax purposes as required by 26 U.S.C. § 642(g) in order for that settlement payment to be deductible for income tax purposes; and the Estate does not refute this contention. See United States' Motion [D.E. 36-1 at 8 n.4]; Estate's Response [D.E. 40 at 7 n.23]. The government argues, therefore, that the Estate is barred by 26 U.S.C. § 642(g) from claiming deductions for all four of these settlement payments in its 2005 income tax return. The Estate counters that the settlement payments constitute deductions with respect to a decedent, thereby rendering the section 642(g) bar inapplicable and permitting it to claim the settlement payments as deductions to both the gross estate and the estate's income.

The government further contends that the Estate cannot avail itself of the benefits of section 1341 because the settlement payments do not qualify as deductions and, under binding Eleventh Circuit law, section 1341 cannot apply absent a statutory deduction. The Estate responds that the settlement payments are properly deductible under sections 162 or 212 of the Tax Code, thereby satisfying the Eleventh Circuit's strict deduction requirement.[3]

---

[3] The Estate does not argue to this Court, but seeks to preserve for appellate review, the contention that a reduction in income renders section 1341 applicable even absent a statutory deduction.

11

*1. The section 642(g) bar*

The government's argument that section 642(g) bars the Estate's tax refund claim runs as follows. First, the government relies on section 461(h) for the proposition that liability for settlement payments is not "incurred" for tax purposes until payment actually occurs. Section 461(h) supports this contention because it states that a liability is "incurred" when economic performance occurs with respect to the liability, and economic performance for liability arising out of tort claims occurs as payment is made. 26 U.S.C. § 461(h); 26 C.F.R. §§ 1.461-4(a)(1); 1.461-1(c)(1)(ii)(B); 1.461-4(g)(2); 1.461-4(g)(1)(ii)(A). Next, the government correctly posits that Batchelor could not have "incurred" liability for the settlement payments under section 461(h) prior to his death because the settlement payments occurred in 2004 and Batchelor passed away in 2002. The government then contends that, because Batchelor was not "liable" for the settlement payments at the time of his death, deductions for the settlement payments by the Estate are not "deductions in respect of a decedent" under section 691(b). This point is supported by the Treasury Regulations, which provide that "deductions in respect of a decent" are expenses, interest, and taxes "for which the decedent was liable, which were not properly allowable as a deduction in his last taxable year or any prior taxable year." 26 C.F.R. § 1.691(b)-1(a) (emphasis added). Therefore, the government correctly concludes that the settlement payments do not come within the exception to the section 642(g) bar against double deductions for estate and income tax purposes. See 26 U.S.C. § 642(g) ("This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).").

The Estate counters that section 461(h) does nothing more than specify when an income tax deduction for settlement payments can be taken and that it complied with that provision by waiting until the tax year when the payments were made to take the deduction. According to the

Estate, Batchelor really was liable for the settlement payments prior to his death, notwithstanding the provisions of section 461(h), because "all of the conduct alleged to give rise to the liabilities occurred—and therefore the causes of action had accrued—prior to Mr. Batchelor's death." Estate's Response [D.E. 40 at 8]. In making this argument, the Estate fails to acknowledge that, for tax purposes, the term liability does not equate to the accrual of a legal cause of action. Rather, "[t]he term 'liability' includes any item allowable as a deduction, cost, or expense for Federal income tax purposes." 26 C.F.R. § 1.461-1(c)(1)(ii)(B).

The Estate also attempts to characterize the post-mortem settlement payments as contingent liabilities of the decedent that qualify under section 691(b), relying on In re ***, GMC 34524, 1971 WL 29019 (IRS GMC June 14, 1971) for the proposition that "section 691(b) of the Code includes a deduction for which the decedent had a contingent liability at the time of his death." Estate's Response [D.E. 40 at 8 n.25]. As discussed above, however, Batchelor could not have had a contingent liability for the settlement payments at the time of his death by operation of Section 461(h). Moreover, contrary to the Estate's oral argument, the application of section 461(h) to post-mortem settlement payments does not render section 691(b) an empty or useless provision, since other items such as expenses, interest and taxes may still come within its scope. See 26 C.F.R. § 1.691(b)-1(a) ("[D]eductions in respect of a decedent" are expenses, interest, and taxes "for which the decedent was liable, which were not properly allowable as a deduction in his last taxable year or any prior taxable year.").[4]

The analysis in Comm'r v. U.S. Trust Co., 143 F.2d 243 (2d Cir. 1944), supports the conclusion that the settlement payments for the Harrington Lawsuit, the Feltman Lawsuit, the IALPR Claim and the IAL Lawsuit do not constitute deductions with respect to a decedent under

---

[4] The undersigned appreciates but is not persuaded by the post-hearing supplemental authorities submitted by the Estate on this issue since none of them pertains to settlement payments [D.E. 53 at 5-6].

13

section 691(b). In U.S. Trust, the taxpayer's decedent had been sued in 1933 in a derivative stockholder's action for negligence as director of a bank. Id. at 244. "After his death, some three years after this suit began, taxpayer, as his executor, was substituted for him as defendant and continued to deny liability. Subsequently, in 1937, the suit was settled for $2,500,000, of which the share of the decedent was $250,000. Judgment based on this settlement was entered. Taxpayer paid the full amount plus expenses of $3,087.35." Id. The executor claimed a deduction for $2,503,87.35, which the IRS Commissioner disallowed. In applying the predecessor provisions to 26 U.S.C. § 451 (General rule for taxable year of inclusion) and 26 U.S.C. § 461 (General rule for taxable year of deduction),[5] and concluding that the deduction was not proper, the Second Circuit stated:

> Here the decedent had never conceded any liability but had denied it. The judgment entered after his death did not result from a trial but from a settlement to which taxpayer, decedent's executor, agreed after his death. The record shows no facts existing, during his life, from which anyone at that time could, with any degree of accurate approximation, have ascertained the amount of this liability (if

---

[5] In U.S. Trust, the Second Circuit was applying the following sections of the Revenue Act of 1936:

> Section 42. Period in which items of gross income included. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.

> Sec. 43. Period for which deductions and credits taken. The deductions and credits (other than the corporation dividends paid credit provided in section 27) provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. In the case of the death of a taxpayer there shall be allowed as deductions and credits for the taxable period in which falls the date of his death, amounts accrued up to the date of his death * * * if not otherwise properly allowable in respect of such period or a prior period. 26 U.S.C.A.Int.Rev.Code, §§42, 43.

U.S. Trust, 143 F.2d at 244. Sections 42 and 43 of the Revenue Act of 1936 can be traced to the current Tax Code provisions contained in 26 U.S.C. §§ 451 & 461, respectively.

> indeed there was any liability whatever[)].
>
> \*\*\*
>
> That all the facts upon which the stockholders' suit was based had occurred in that period is not enough; the liability and its amount were the consequence of a settlement which occurred after decedent's death (because taxpayer then deemed it wise to settle) and which might never have occurred if decedent had continued to live.

Id. at 245. Like the executor/taxpayer in U.S. Trust, the Estate was substituted in the pending lawsuits and decided to settle the Harrington Lawsuit, the Feltman Lawsuit, the IALPR Claim, and the IAL Lawsuit after Batchelor's death. As in U.S. Trust, settlement might never have occurred if Batchelor had continued to live. Therefore, applying the rationale of U.S. Trust further supports the conclusion that the settlement payments for the Harrington Lawsuit, the Feltman Lawsuit, the IALPR Claim, and the IAL Lawsuit are not deductions "for which the decedent was liable, which were not properly allowable as a deduction in his last taxable year or any prior taxable year." 26 C.F.R. § 1.691(b)-1(a).

The Estate also contends that allowing the double deduction for the settlement payments is an appropriate equitable result. However, equity does not play a role in determining how tax deductions apply. Comm'r v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148 (1974) ("The propriety of a deduction does not turn upon general equitable considerations."). See also Lettie Pate Whitehead Found. Inc. v. U.S., 606 F.2d 534, 539 (5th Cir. 1979) ("[T]he permissible deductions are strictly controlled by the code and equity cannot create a deduction not granted by the code."); Jeffries v. Comm'r, 158 F.2d 225, 226 (5th Cir. 1947) ("Whether a transaction or result is taxable and what the tax is is not a matter to be determined in law upon considerations of general justice or equity. It is a matter of statutes and valid regulations, and what they mean.").

Based on the foregoing, the undersigned concludes that section 642(g) bars the Estate from taking an income tax deduction for the settlement payments it made in connection with the Harrington Lawsuit, the Feltman Lawsuit, the IALPR Claim, and the IAL Lawsuit. Hence, the Estate cannot take advantage of the benefits of section 1341 to claim the refund sought in Count III of the Complaint and the United States is entitled to summary judgment on that count.

2. *The section 1341 independent deduction requirement*

Although section 1341 is not available to the Estate, the undersigned addresses the Estate's arguments that the settlement payments are properly deductible in 2005 under either section 162 or 212 of the Tax Code for the sake of completeness.

Section 162 permits a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162. The Estate argues that the focus of the section 162 inquiry to determine whether the settlement payments are deductible by the Estate is "to look to the 'origin of the claim' and assess whether the expense originated from the business activities of the taxpayer." Estate's Supplemental Brief [D.E. 53 at 7]. The Estate further argues that the settlement payments are deductible by it under section 162 because they arose out of Batchelor's business activities in selling his IAL assets. Id. at 8. In essence, the Estate is characterizing the settlement payments as deductions with respect to the decedent under section 691(b). As discussed above, such deductions are barred by section 461(h).

The Estate's reliance on Section 212 is similarly flawed. This section provides:

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year --
(1) For the production or collection of income.

26 U.S.C. § 212. The Estate makes the same "origin of the claim" argument for deductibility of

the settlement payments under section 212 as it does for section 162. Estate's Supplemental Brief [D.E. 53 at 8]. Again, such deductions with respect to a decedent under section 691(b) are barred by section 461(h). The Estate also contends that litigation expenses are deductible by the Estate notwithstanding that it is not engaged in a trade or business, relying on 26 C.F.R. § 1.212-1(i). Id. at 9. The cited Treasury Regulation provides:

> Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212, notwithstanding that the estate or trust is not engaged in a trade or business, except to the extent that such expenses are allocable to the production or collection tax-exempt income. *But see section 642(g) and the regulations thereunder for disallowance of such deductions to an estate where such items are allowed as a deduction under section 2053 or 2054 in computing the net estate subject to the estate tax.*

26 C.F.R. § 1.212-1(i) (emphasis added). In its citation of this regulation, the Estate omitted the italicized portion, which essentially nullifies its argument. See Estate's Supplemental Brief [D.E. 53 at 9].

For the additional reason that the Estate cannot meet the independent deduction requirement of section 1341, the government is entitled to summary judgment on Count III.

## VI. CONCLUSION

Based on the foregoing considerations, the undersigned respectfully **RECOMMENDS** that Defendant United States of America's Motion for Summary Judgment as to Count III of the Complaint [D.E. 36] be **GRANTED.**

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained

herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at Miami, Florida, this 13th day of May, 2013.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
Chief United States District Judge Federico A. Moreno
Counsel of Record