UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  12-20038-CIV-MORENO**

ANNE BATCHELOR-ROBJOHNS, DANIEL J.
FERRARESI and FATHER PATRICK O'NEILL
as Co-Personal Representatives of the ESTATE
OF GEORGE BATCHELOR,

       Plaintiff,

vs.

UNITED STATES OF AMERICA,

       Defendant.

_____/

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT III

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment on Count I **(D.E. No. 21)**, filed on **August 31, 2012**, as well as upon Defendant's Motion for Summary Judgment on Count III **(D.E. No. 36)**, filed on **October 16, 2012**. On January 5, 2012, Anne Batchelor-Robjohns, Daniel J. Ferraresi, and Father Patrick O'Neill, the co-personal representatives of Plaintiff Estate of George Batchelor, filed a complaint containing three counts seeking federal income tax refunds, of which only Count I and Count III are at issue here. In Count I, the Estate requests a refund for the personal income tax obligation that allegedly arose out of the purchase of option assets during the sale of George Batchelor's aviation business, International Air Leases, Inc. ("IAL"), in 1999. In Count III, the Estate seeks an additional income tax refund for the 2005 tax year, asserting that it is entitled to an income tax deduction for settlement payments that it made in July 2004.

The Estate filed its motion for summary judgment as to Count I on August 31, 2012, contending that the doctrine of res judicata bars Defendant United States of America from contesting its refund claim.  Specifically, the Estate cites this Court's 2005 grant of summary judgment in *United States v. Batchelor-Robjohns* (*Batchelor I*), No. 03-20164-CIV-UNGARO-BENAGES (Oct. 31, 2005) as a final judgment on the merits on the same cause of action as the present matter. Because this Court finds both that the present case involves the same cause of action as *Batchelor I* and that it involves a claim that could have been raised in *Batchelor I*, the Court grants the Estate's motion for summary judgment as to Count I.

In contrast, the government filed its motion for summary judgment as to Count III on October 16, 2012, arguing that 26 U.S.C. § 642(g) precludes the Estate from taking an income tax deduction for the settlement payments after it previously took an estate tax deduction for the payments in 2003. Since the Court finds that the settlement payments arose from liabilities concerning the sale of IAL, a transaction for which Batchelor reported a capital gain, the Court concludes that the Estate cannot identify an allowable deduction under 26 U.S.C. § 691(b).  As a result, § 642(g)'s bar on double deductions applies in this instance.  The Court therefore grants the government's motion as to Count III.

## I. FACTUAL BACKGROUND

### A. Count I (Personal Income Tax Refund)

On February 10, 1999, George Batchelor sold his aviation business, IAL, to International Air Leases of P.R., Inc. ("IALPR") for $502 million.[1]  In exchange for nearly half his IAL stock, IAL paid Batchelor almost $235 million in cash and marketable securities.  To cover the

---

[1] The actual figure was $502,181,641.

remainder of the stock, IALPR offered Batchelor approximately $118 million in cash equivalents and a promissory note for $150 million. Additionally, IAL and IALPR negotiated an option for Batchelor to buy back some of the assets transferred in the sale, thereby reducing the balance of the $150 million promissory note by a negotiated price for each asset that he bought back. These option assets included aircraft, engines, and IAL's ownership interest in three joint ventures. On April 1, 1999, Batchelor exercised his option to buy back these assets for an agreed amount of $92,556,865, thus reducing the $150 million note by that amount. IALPR later caused the balance of the note to be paid off in August 2000. Batchelor subsequently declared his income from the sale as a capital gain and paid the appropriate capital gains tax on the proceeds.

As a result of the sale of these option assets, IAL itself realized a substantial capital gain. After an unsuccessful attempt by IAL to shelter its income via a currency swap, Defendant United States sought to collect IAL's corporate income tax obligation from Batchelor under a theory of transferee liability. However, Batchelor died on July 29, 2002. The government accordingly filed a lawsuit (*Batchelor I*) with this Court in January 2003 against Plaintiff Estate of George Batchelor as Batchelor's successor in interest.[2]

To establish its case, the government sought to prove that the value of the transfer of the option assets constituted excess consideration that rendered IAL insolvent, therefore assigning liability to Batchelor as the transferee of those assets. In doing so, the government asserted that the real value of the option assets was higher than the amount that Batchelor and IALPR agreed upon.

---

[2] The government filed a similar lawsuit (*Batchelor II*) in November 2004 asserting comparable claims against the Estate. The Court stayed the case in March 2005 and the parties later stipulated to dismissal with prejudice in May 2006 after the Court issued its summary judgment order in *Batchelor I*.

During the ensuing litigation, the Court struck all of the government's experts for failure to comply with the expert disclosure requirements.  As a result, the government could not prove its case and the Court granted summary judgment in favor of the Estate on October 31, 2005.  Consequently, the Court did not actually reach the merits of the government's contention that Batchelor had received excess consideration from the transfer of the option assets.  Moreover, though the Court permitted the government to file additional claims against the Estate through April 2004, the government never did so.

On November 5, 2004, the government filed a statement of claim in the Batchelor probate case for unpaid personal income tax obligations, including liability arising from the 1999 transfer of the option assets.  In particular, the government contended, as it did in *Batchelor I*, that the option assets involved in the sale had a higher market value than Batchelor and IALPR had agreed upon, thus resulting in a higher personal income tax obligation on the part of Batchelor.[3]  The Estate filed an objection to this statement of claim and the government thereafter filed a new suit (*Batchelor III*) with this Court on December 17, 2004.  However, the government filed this claim before the Internal Revenue Service ("IRS") issued the statutorily required notice of deficiency to the Estate.  When the IRS finally did issue its notice of deficiency on April 29, 2005, the Estate opted to pay the tax obligation claimed.  As a result, the government and the Estate filed a stipulation for dismissal without prejudice in *Batchelor III* on July 29, 2005 acknowledging the fact that the Estate had paid the contested tax liability but retained the right to assert a refund claim at a later time.

---

[3]  Specifically, the government valued Batchelor's additional personal income tax obligation at $6,715,045, including interest.

That refund claim is now the subject of Count I of the Estate's present complaint, filed with this Court on January 5, 2012 after the IRS denied the Estate's initial claim for a refund. On August 31, 2012, the Estate filed a motion for summary judgment contending that the doctrine of res judicata bars the government from challenging its pursuit of a refund in light of the Court's decision in *Batchelor I*. This Court referred that motion to Magistrate Judge Alicia M. Otazo-Reyes for a report and recommendation, which she issued on May 13, 2013. In her report, Magistrate Judge Otazo-Reyes recommends that the Court deny the Estate's motion for summary judgment as to Count I.

### B. Count III (Refund Pursuant to § 1341)

Following the February 10, 1999 sale of Batchelor's ownership interest in IAL to IALPR, a number of parties filed suit challenging the transaction. In particular, IAL sued the Estate on October 10, 2002 seeking to set aside the sale as a fraudulent transfer. A week later, IALPR filed a claim in the Estate's probate proceeding also seeking damages from Batchelor's allegedly fraudulent sale of his ownership interest.

In addition, the Estate inherited two ongoing lawsuits that had commenced prior to Batchelor's death, both stemming from Batchelor's involvement with Rich International Airways. Rich itself had filed for Chapter 11 bankruptcy in 1996, forming the Rich Liquidating Trust with James Feltman as the trustee. On August 5, 1999, Rich, via Feltman, filed suit against Batchelor, later amending its suit to include the Estate, for claims arising out of Batchelor's involvement with Rich. Specifically, Rich alleged that Batchelor interfered with Rich's ability to profit from a joint venture agreement between it and IAL and engaged in self-dealing that was detrimental to the interests of both Rich as well as the joint venture. Rich further asserted a

claim against IAL in IAL's bankruptcy proceedings, as well as a claim in the Estate's probate proceedings.

In the second suit, Linda Harrington, a Rich shareholder, initiated claims against Batchelor and IAL on March 9, 1999 for breach of contract and tortious interference with a contract. According to Harrington, Batchelor acquired his interest in Rich subject to a covenant to use his best efforts to sell Rich. Harrington asserted that Batchelor later violated this covenant to the financial advantage of IAL.

Though the relevant conduct in these two suits occurred prior to Batchelor's 1999 sale of his interest in IAL, both Rich and Harrington sued Batchelor after the sale in an effort to "follow the money." Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 3. As Feltman himself explained, Rich pursued Batchelor because "the value that had been in IAL who we felt was the primary party with economic responsibility were [sic] transferred to Mr. Batchelor." Pl.'s Resp. to Def.'s Statement of Undisputed Facts and Statement of Additional Relevant Facts ¶ 18. Thus "[b]ecause IAL did not have any money and Batchelor received the assets of IAL in connection with his sale of the IAL stock sale, Rich sought the money that it claimed it was owed by IAL from the Batchelor Estate." Id. As a result, "the damages [Rich] sought from the Batchelor Estate were related to, if not the same as, the damages that Rich sought from IAL." Id.

From 2002 to 2004, the Estate decided to settle each of the pending claims against it, settling with Harrington for $2 million in October 2002, with Feltman for $25 million in December 2002, with IALPR for $12 million in August 2003, and with IAL for $1 million in March 2004. On October 29, 2003, the Estate filed a Form 706 Federal Estate Tax Return in which it deducted from the gross estate the settlement amounts from the Harrington, Feltman,

and IALPR lawsuits as claims against the estate.  Notably, the Estate did not deduct the

settlement amount from the IAL suit, later claiming that this omission was due to a mistake.  In

July 2004, the Estate finally made the settlement payments in all four suits, collectively paying

about $41 million of the proceeds from the IAL sale.

On September 14, 2006, the Estate filed a claim for an income tax refund for the 2005 tax

year, requesting a refund of $8.3 million pursuant to 26 U.S.C. § 1341 based on the settlement

payments made in all four lawsuits.  The IRS denied that claim on June 3, 2010 and the Estate

now seeks the refund in Count III of its present complaint.  On October 16, 2012, the government

filed a motion for summary judgment as to Count III, arguing that 26 U.S.C. § 642(g) precludes

the Estate from taking an income tax deduction for the settlement payments since it already took

an estate tax deduction for the payments in 2003.  In addition, the government asserts that the

Estate cannot satisfy the independent deduction requirement of 26 U.S.C. § 1341.  This Court

referred the motion to Magistrate Judge Otazo-Reyes as well.  She issued her report and

recommendation on May 13, 2013 urging the Court to grant summary judgment in favor of the

government on Count III.

## II.  LEGAL STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Consequently, the movant "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact."  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  In evaluating whether the movant has met this burden, a court must view all the evidence in the light most favorable to the non-moving party.  *See Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1359 (S.D. Fla. 2009) (citing *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983)).  This means that a court "must construe all facts and draw all reasonable inferences in favor of the non-moving party."  *Id.*

Once the movant has met its burden under Rule 56, the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, "mere conclusory, uncorroborated allegations by a [non-moving party] in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment."  *Dent*, 606 F. Supp. 2d at 1359.  Rather, the non-moving party must come forward with "specific facts showing a genuine issue for trial" or the court will grant summary judgment.  *See Lopez v. Ans*, No. 09-60734-CIV-COHN/SELTZER, 2010 U.S. Dist. LEXIS 7543, at *9 (S.D. Fla. Jan. 29, 2010) (quoting *Matsushita*, 475 U.S. at 587).  A genuine issue of material fact does not exist "unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

### A. Count I (Personal Income Tax Refund)

In its motion for summary judgment, the Estate claims that res judicata precludes the government from contesting the Estate's request for a personal income tax refund because of the Court's ruling in *Batchelor I*.  "Res judicata bars the filing of claims which were raised or could

-8-

have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). As the Eleventh Circuit has stated, res judicata will bar a claim due to prior litigation if the following elements are established: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* Regarding the final determination of whether the causes of action are the same, courts in the Eleventh Circuit must look to "whether the primary right and duty are the same in each case." *Id.* at 1239 (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)). In making this determination, "a court must compare the substance of the actions, not their form." *Id.* (quoting *Citibank*, 904 F.2d at 1503). "[I]n general, . . . if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* (quoting *Citibank*, 904 F.2d at 1503). Moreover, the Eleventh Circuit has acknowledged that "claims are part of the same cause of action for res judicata purposes when they arise out of the same transaction or series of transactions." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296–97 (11th Cir. 2001).

In addition to these four elements, courts must also determine "whether the claim in the new suit was or could have been raised in the prior action." *Id.* at 1296. "[F]or res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992). Importantly, "[a]t all times the burden is on the party asserting res judicata . . . to show that the later-filed suit

is barred." *In re Piper Aircraft Corp.*, 244 F.3d at 1296.

In the context of federal tax litigation, the Supreme Court has applied the doctrine of res judicata to bar subsequent litigation involving the same tax claim and the same tax year. *See Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948). Though "[e]ach year is the origin of a new liability and of a separate cause of action," a judgment on the merits pertaining to a claim involving a particular tax year "is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year." *Id.*

In her report and recommendation, Magistrate Judge Otazo-Reyes first recognizes that the parties do not contest the initial three elements of the res judicata analysis. Moving to the fourth element, however, the magistrate concludes that the Estate has failed to establish that the same cause of action raised in *Batchelor I* is present here. Relying on the *Sunnen* decision, she asserts that *Batchelor I* involved a different tax claim in a different tax year. Specifically, the magistrate finds that *Batchelor I* involved a claim for IAL's corporate income tax during the corporation's April 1, 1999 to March 31, 2000 tax year while the present case pertains to Batchelor's personal income tax for the calendar year 1999.

Furthermore, the magistrate finds that the government could not have brought Batchelor's personal income tax claim in *Batchelor I*. Citing 26 U.S.C. § 6213(a), the magistrate notes that the IRS cannot make an assessment of a deficiency or initiate a proceeding in court for that deficiency until ninety days after mailing the notice of the deficiency to the taxpayer. *See* 26 U.S.C. § 6213(a) (2013).[4] In this case, the IRS only issued its notice of deficiency to the Estate

---

[4] A taxpayer may also extend this time bar by filing a petition with the Tax Court. *See* 26 U.S.C. § 6213(a). If the taxpayer does so, the IRS may not initiate a proceeding in court until the conclusion of the Tax Court proceeding . *See id.*

on April 29, 2005, thereby precluding the government from pursuing the claim in court until July 29, 2005. As this date was over a year after the April 2004 deadline for the amendment of pleadings in *Batchelor I*, the magistrate concludes that the government could not have brought the present claim in that case.

The Estate first objects to the magistrate's finding that *Batchelor I* concerned a different cause of action from the present case. It asserts that since the two claims arise out of the same transaction, specifically the 1999 transfer of the option assets, the claims therefore arise out of the same nucleus of operative fact and are therefore the same cause of action. In fact, the Estate notes that the government is trying in this case to prove the same thing that it tried to prove in *Batchelor I*: namely that the value of the option assets was higher than the value that Batchelor and IALPR agreed upon.

The Estate further rejects the magistrate's application of *Sunnen*, asserting that the two claims do in fact involve the same tax year. According to the Estate, the fact that the date of the transaction fell in the middle of Batchelor's 1999 tax year but on the first day of IAL's April 1, 1999 to March 31, 2000 tax year is not relevant. What is relevant, in the Estate's estimation, is that *Batchelor I* involved the exact same transfer on the exact same date as the present case. In fact, the Estate observes that the government asserted claims in *Batchelor I* for IAL's tax years ending March 31, 1999 and March 31, 2000.

Nonetheless, the Estate adamantly denies that *Sunnen* even applies here since *Batchelor I* involved the litigation of a non-tax claim. Citing the Eleventh Circuit's decision in *Baptiste v. Commissioner*, the Estate argues that a transferee liability claim such as the one raised in *Batchelor I* is not a tax liability at all, but rather an independent liability. *See Baptiste v.*

-11-

*Comm'r*, 29 F.3d 1533, 1541 (11th Cir. 1994) (finding that transferee liability for the estate tax is not a tax liability but rather "an independent liability"). Since the Supreme Court's decision in *Sunnen* pertains to the application of res judicata to separate proceedings involving two tax claims, the Estate argues that the presence of the non-tax transferee liability claim in *Batchelor I* renders *Sunnen* inapplicable to the present case.

Finally, the Estate contends that the personal income tax claim against Batchelor was in existence at the time the original complaint was filed in *Batchelor I* because such a claim came into existence the moment that the deficient return was filed in 2000. Though the government may have had to have waited ninety days after the mailing of the notice of deficiency to initiate a proceeding in federal court, the Estate asserts that there was nothing preventing the government from mailing the notice of deficiency well before the *Batchelor I* complaint was filed in January 2003. In fact, the government had fourteen months after the filing of the complaint to file an amended pleading in *Batchelor I*. Since the ninety-day waiting period is designed primarily to help the taxpayer, the Estate argues that the government cannot use the period as a means of avoiding res judicata by dodging any implicit deadline for filing such a claim.

In response, the government reiterates the magistrate's finding that the claims at issue in the two cases are distinct. Citing the Tax Court's decision in *Towe v. Commissioner*, the government notes that two separate tax claims arising from the same transaction create separate causes of action. *Towe v. Comm'r*, 64 T.C.M. (CCH) 1424, 1992 Tax Ct. Memo LEXIS 733 (1992). In *Towe*, the IRS originally pursued income tax liabilities that arose from a property transfer, which the government later settled with the taxpayers. *See id.* at *5–6. The IRS subsequently filed suit against the same parties, as transferees, for gift tax liabilities arising from

-12-

the same transaction. *See id.* at *6–7. Though the two tax liabilities arose from the same transaction and taxable period, the Tax Court found that the "imposition of income tax and gift tax creates separate causes of action." *Id.* at *18. In addition, the government reasserts the magistrate's finding that the claim in *Batchelor I* concerned a different tax year than the present case. Lastly, the government again states that it could not have brought the personal income tax claim in *Batchelor I* due to the ninety-day waiting period after it mailed the notice of deficiency in April 2005.

Despite the government's emphasis on the Tax Court's decision in *Towe*, the Court finds as an initial matter that the present case involves the same claim or cause of action as *Batchelor I* under the Eleventh Circuit's case law regarding the doctrine of res judicata. In comparing the substance of the actions involved in the two cases, the Court finds that both cases arise out of the same nucleus of operative fact and are based upon the same factual predicate since they both pertain to the tax implications of the 1999 transfer of the option assets. *See Ragsdale*, 193 F.3d at 1239. Indeed, both cases arise out of the very same transaction. Accordingly, the government here is attempting to establish the exact same thing it sought to prove in *Batchelor I*: that the value of the option assets transferred to Batchelor in 1999 had a higher value than Batchelor and IALPR agreed upon. Thus, as the Eleventh Circuit has stated, where claims such as these "arise out of the same transaction or series of transactions," they are " part of the same cause of action for res judicata purposes." *See In re Piper Aircraft Corp.*, 244 F.3d at 1296–97.

Nor does the Court concur with the government's assertion that *Batchelor I* and the present case involve claims from different tax years. That the date of the transaction fell in the middle of Batchelor's 1999 tax year but on the first day of IAL's April 1, 1999 to March 31,

-13-

2000 tax year is not material.  This case focuses on a single transaction that occurred on a specific date.  Though the transaction technically fell on different tax years for IAL and Batchelor, that is only because their taxable years were measured differently.  This does not change the fact that the transaction occurred on the same calendar date for both IAL and Batchelor.  Moreover, as the Estate noted, the government asserted claims in *Batchelor I* for IAL's tax years ending March 31, 1999 and March 31, 2000, thus covering Batchelor's 1999 taxable year on both ends.

Finally, the Court finds that the present claim could have been raised in *Batchelor I*. Notwithstanding 26 U.S.C. § 6213(a)'s restriction on the IRS's ability to make an assessment until ninety days after issuance of a notice of deficiency, a number of circuit courts have held that a tax deficiency notice does not create a tax obligation but rather serves as a reminder of a preexisting debt.  *See United States v. Jewell*, 614 F.3d 911, 923 (8th Cir. 2010) (holding that the defendant "wrongly equate[d] a tax assessment with a tax deficiency" and noting that "there can be a tax deficiency without an assessment"); *United States v. Ellett*, 527 F.3d 38, 40 (2d Cir. 2008) ("A tax deficiency notice 'merely reminds the taxpayer of his duty to pay a tax debt already due[, it] does not create that liability.'" (quoting *United States v. Voorhies*, 658 F.2d 710, 714 (9th Cir. 1981))); *Voorhies*, 658 F.2d at 714 ("A tax deficiency exists from the date a return is due to be filed . . . .").  As a result, the personal income tax claim against Batchelor, and later the Estate, came into existence when the return was filed in 2000.  *See Voorhies*, 658 F.2d at 714. Though the IRS in fact never issued its notice of deficiency for the return until April 2005, nothing prevented the government from doing so earlier.  In truth, the government had over two years between the filing of the return in 2000 and the filing of *Batchelor I* in January 2003 to

pursue the claim.  If that period was not enough, the government had an additional fourteen months after the filing of *Batchelor I* to add the new claim to the case.  For these reasons, the Court does not agree with the government's contention that the claim could not have been brought in *Batchelor I*.

Since the Estate has established that the present case and *Batchelor I* involve the same cause of action, as well as the fact that the personal income tax claim against Batchelor could have been brought in *Batchelor I*, the Court concludes that res judicata bars the government from contesting the Estate's request for a refund.  Consequently, the Court grants the Estate's motion for summary judgment as to Count I.

### B.  Count III (Refund Pursuant to § 1341)

The government asserts in its motion for summary judgment on Count III that § 642(g) bars the Estate from seeking a second, or double, deduction for the settlement payments.  Moreover, it contends that the Estate has not satisfied the independent deduction requirement of § 1341.  Under § 1341, "a taxpayer is entitled to relief if in one year the taxpayer included an item as gross income and paid tax on that income, then in a subsequent year is compelled to return the item."  *Steffen v. United States (In re Steffen)*, 349 B.R. 734, 738 (M.D. Fla. 2006).  In claiming such relief, the taxpayer bears the burden of demonstrating that:

> (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item; (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and (3) the amount of such deduction exceeds $3,000.

26 U.S.C. § 1341.  Moreover, "[s]ince § 1341 does not independently create a deduction, a

taxpayer must be entitled to a deduction under another provision of the code." *Steffen*, 349 B.R. at 738.

Despite the allowance of relief under § 1341, § 642(g) generally prevents an estate from claiming both an estate tax deduction under § 2053 or § 2054 and an income tax deduction for the same expense. *See* 26 U.S.C. § 642(g) ("Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction (or as an offset against the sales price of property in determining gain or loss) in computing the taxable income of the estate or of any other person, unless there is filed, within the time and in the manner and form prescribed by the Secretary, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054." (citations omitted)). Consequently, an estate normally must choose to deduct the amount from the gross estate for estate tax purposes or from the estate's gross income for income tax purposes, but not both. *See id.*

Nevertheless, the statute indicates that it "shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents)." *Id.* (citation omitted). As explained by the Treasury Regulations:

> Section 642(g) has no application to deductions for taxes, interest, business expenses, and other items *accrued at the date of a decedent's death* so that they are allowable as a deduction under section 2053(a)(3) for estate tax purposes as claims against the estate, and are also allowable under section 691(b) as deductions in respect of a decedent for income tax purposes.

26 C.F.R. § 1.642(g)-2 (2013) (emphasis added) (citations omitted). In contrast, the bar on double deductions enumerated in § 642(g) does apply "to deductions for interest, business

-16-

expenses, and other items *not accrued at the date of the decedent's death* so that they are allowable as deductions for estate tax purposes only as administration expenses under section 2053(a)(2)." *Id.* (emphasis added) (citation omitted).

> Section 691(b) itself provides:
>
> The amount of any deduction specified in section 162, 163, 164, 212, or 611 (relating to deductions for expenses, interest, taxes, and depletion) or credit specified in section 27 (relating to foreign tax credit), in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his death, or a prior period, shall be allowed . . . [i]n the case of a deduction specified in section 162, 163, 164, or 212 and a credit specified in section 27, in the taxable year when paid . . . to the estate of the decedent.

26 U.S.C. § 691(b). The Treasury Regulations further define "deductions in respect of a decedent" as those "expenses, interest, and taxes described in sections 162, 163, 164, and 212 for which the decedent (or a prior decedent) was *liable*, which were not properly allowable as a deduction in his last taxable year or any prior taxable year." 26 C.F.R. § 1.691(b)-1(a) (emphasis added).

Since the Estate already claimed the settlement payments as deductions from the gross estate for estate tax purposes in 2003, Magistrate Judge Otazo-Reyes focuses her report and recommendation on the application of § 642(g), ultimately finding that the provision bars the Estate from claiming the double deduction. As an initial matter, the magistrate concludes that the settlement payments are not deductions in respect of a decedent under § 691(b) because Batchelor, as the decedent, was not "liable" for the payments at the time of his death or any time prior. *See id.* (defining "deductions in respect of a decedent" under § 691(b) as those "expenses, interest, and taxes described in sections 162, 163, 164, and 212 for which the decedent (or a prior

decedent) was *liable*, which were not properly allowable as a deduction in his last taxable year or any prior taxable year" (emphasis added)).

To determine whether Batchelor was "liable" for the payments, the magistrate turns to 26 U.S.C. § 461(h) and its definition of when a liability is "incurred." That provision states that "in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs." 26 U.S.C. § 461(h)(1). Where "the liability of the taxpayer requires a payment to another person and . . . arises out of any tort, . . . economic performance occurs as the payments to such person are made." *See id.* § 461(h)(2)(C). Accordingly, since the Estate did not actually make the settlement payments until 2004, the magistrate concludes that Batchelor himself never incurred this liability at the time of his death in 2002 or at any time prior as required by § 691(b). Thus, as the payments are not covered by § 691(b), the exception to § 642(g) does not apply and the provision prohibits the Estate from claiming a second deduction from its income tax liability for the settlement payments.

In reaching this determination, the magistrate finds that "liability" does not mean the accrual of a cause of action. Rather, she points to 26 C.F.R. § 1.446-1(c)(1)(ii)(B) which defines "liability" as including "any item allowable as a deduction, cost, or expense for Federal income tax purposes." 26 C.F.R. § 1.446-1(c)(1)(ii)(B). From this regulation, she concludes that "liability" pertains to the actual payment of the settlement amounts as opposed to the initiation of the suits from which the settlements derived. The magistrate also denies by operation of § 461(h) that the settlement payments were contingent liabilities. Indeed, the magistrate notes that the settlements at issue in this case may never have occurred had Batchelor lived.

-18-

Finally, the magistrate briefly addresses the government's alternative contention that the Estate failed to satisfy § 1341's independent deduction requirement.  Though the Estate claims that the payments are independently deductible as business expenses under 26 U.S.C. § 162 or as expenses for the production of income under 26 U.S.C. § 212, the magistrate finds that the argument is moot as she has already determined that the payments do not qualify under § 691(b) by operation of § 461(h), and therefore do not fall under the exception to § 642(g).

Though the magistrate's report and recommendation does not address the issue, the Court notes that the government additionally argued in its motion for summary judgment and at oral argument that the Estate failed to identify an appropriate deduction provision that both satisfies § 1341's independent deduction requirement and qualifies under § 691(b)'s exception to § 642(g). Before addressing the complexities of the issues raised in the report and recommendation, the Court accordingly wishes to address this preliminary matter.

As previously stated, "[s]ince § 1341 does not independently create a deduction, a taxpayer must be entitled to a deduction under another provision of the code." *Steffen*, 349 B.R. at 738.  Where, as in this case, a taxpayer estate both claims a deduction under § 1341 and seeks to avoid the bar on double deductions contained in § 642(g), the estate must additionally identify one of the deduction provisions listed in § 691(b) that qualifies as an exception to § 642(g). *Compare* 26 U.S.C. § 642(g) ("This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents)."), *with id.* § 691(b) (identifying certain deduction provisions that qualify under its exception to § 642(g)).  In particular, the estate must claim a deduction under "section 162, 163, 164, 212, or 611 (relating to deductions for expenses, interest, taxes, and depletion)." *Id.* § 691(b); *see also* 26 C.F.R. § 1.691(b)-1(a)

-19-

(defining "deductions in respect of a decedent" as those "expenses, interest, and taxes described in sections 162, 163, 164, and 212").

As stated, the Estate here claims that the settlement payments are independently deductible under either § 162 or § 212. To this end, the Estate first notes that Batchelor would have had a legal obligation to restore to IAL and its creditors any excess consideration received from the 1999 sale of his interest in IAL if it had been determined that the sale rendered IAL insolvent. The Estate therefore maintains that the payment of the settlements was an ordinary and necessary business expense in connection with Batchelor's business and income-producing activity as an investor. Stated otherwise, "[t]he settlement expenses related to claims alleging that, in obtaining the income from the sale of his interests in IAL, Mr. Batchelor received too much money and assets. To resolve claims to recover the entire amount he received, the Estate paid back—refunded—a portion of his income." Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 18.

The government however insists that because Batchelor reported a capital gain from the IAL transaction, the Estate cannot identify an appropriate deduction provision enumerated in § 691(b) as an exception to § 642(g). Regarding the Estate's citation of § 162, the government cites the former Fifth Circuit's holding in *Kimbell v. United States* that "a payment made by a taxpayer in satisfaction of a liability arising from an earlier transaction, on which that taxpayer reported capital gain, must be treated as a capital loss at least to the amount of the capital gain" and not as a § 162 business expense, "regardless of the taxpayer's motivation for making the

payment." *Kimbell v. United States*, 490 F.2d 203, 205 (5th Cir. 1974).[5]   Since the Estate must

therefore treat the settlement payments as a capital loss rather than as a § 162 business expense,

the government concludes that the Estate fails in its first attempt to satisfy § 691(b).

Turning to the Estate's alternative citation of § 212, the government stresses the Eleventh

Circuit's position that, "[a]s a matter of statutory construction, it is well settled that § 162(a) and

212 are to be considered in pari materia." *Sorrell v. Comm'r*, 882 F.2d 484, 487 (11th Cir.

1989). For this reason, "the restrictions and qualifications applicable to the deductibility of trade

or business expenses are also applicable to expenses covered by section 212." *Id.* at 488 (quoting

*Johnsen v. Comm'r*, 794 F.2d 1157, 1162 (6th Cir. 1986)). From this, the government asserts

that *Kimbell*'s restriction applies equally to the Estate's citation of § 212.

Based on this Circuit's precedent, the Court concludes as well that the Estate has failed to

identify a suitable deduction provision that satisfies § 691(b)'s exception to § 642(g). To begin,

the Court notes the Estate's insistence that the settlement payments in this case "arose out of Mr.

Batchelor's business activities in selling his IAL assets." Pl.'s Supplemental Br. in Supp. of

Summ. J. on Counts I and III 8; *see also* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 18

("The settlement expenses related to claims alleging that, in obtaining the income from the sale

of his interests in IAL, Mr. Batchelor received too much money and assets."). Additionally, it is

undisputed that Batchelor declared his income from the sale of his interest in IAL as a capital

gain. *See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 19 ("Because Mr. Batchelor declared

this income as a capital gain, but did not get to keep it, his Estate should be able to exclude the

---

[5] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981).

gain he returned and recalculate the tax. . . . The Estate is not seeking an unfair result—it sought the refund of the capital gains tax, not ordinary income tax."); *see also* Dep. of Daniel J. Ferraresi 102:2–8 (describing the settlement payments as "reductions in capital gain"). In truth, the Estate asserts that "all of the settlements established that Mr. Batchelor and hence his Estate did not have the right to keep all the proceeds of his sale of the IAL stock for which he had previously paid capital gains tax." Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 20.

Since the proceeds of the IAL sale constituted a capital gain, the Court finds that *Kimbell* precludes treating the disgorgement of those proceeds via the settlement payments as a deductible business expense under § 162. In *Kimbell*, the taxpayer reported a capital gain from the sale of oil and gas leases. *Kimbell*, 490 F.2d at 204. When it was later discovered that the wells on the leases were illegally slanted, a bank that had a security interest in the leases threatened the taxpayer with a fraud lawsuit. *Id.* The taxpayer then settled the suit and attempted to claim a deduction for the settlement payment as an ordinary and necessary business expense. *Id.* In doing so, the taxpayer argued that the settlement was made to protect his business reputation. *See id.* Holding that "[i]t is the origin and character of the claim against the taxpayer that controls the characterization of settlement expenses for federal tax purposes," the Fifth Circuit concluded that "a payment made by a taxpayer in satisfaction of a liability arising from an earlier transaction, on which that taxpayer reported capital gain, must be treated as a capital loss at least to the amount of the capital gain, regardless of the taxpayer's motivation for making the payment." *Id.* at 204–05. The court as a result disallowed the taxpayer's requested business expense deduction. *See id.* at 205.

Like the taxpayer in *Kimbell*, Batchelor reported the income of the IAL sale as a capital

gain and paid a capital gains tax on the proceeds. As the Estate concedes, the settlement payments were made in satisfaction of liabilities arising from the IAL transaction. *See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 18; Pl.'s Supplemental Br. in Supp. of Summ. J. on Counts I and III 8. Though the Estate is now attempting to deduct those payments as ordinary and necessary business expenses, *Kimbell* bars such a deduction. *See Kimbell*, 490 F.2d at 205. Instead, the payments may only be treated as a capital loss, an expense that is not covered by § 691(b).

In addition, the government correctly observes that this Circuit interprets § 162 and § 212 in pari materia. *See Sorrell*, 882 F.2d at 487. Hence, binding precedent in this Circuit has also applied the "origin of the claim" test to a claim for a § 212 deduction that arose from an underlying capital gain. *See Estate of Meade v. Comm'r*, 489 F.2d 161 (5th Cir. 1974). In *Estate of Meade*, the taxpayers hired a law firm to assist them in pursuing antitrust claims against a corporation that they had dealt with. *See id.* at 162. When the lawsuit resulted in a settlement, the taxpayers reported the income as a capital gain. *Id.* at 163. Nevertheless, the taxpayers attempted to deduct their legal fees associated with the suit as payments for the production of income under § 212. *See id.* Applying the "origin of the claim" test, the former Fifth Circuit concluded that the legal fees were expenses to be offset against the capital gain received in the settlement rather than as a § 212 deduction. *See id.* at 166. From this, the Court must likewise conclude based on its above analysis in relation to § 162 that the Estate's claim for a deduction under § 212 also fails.

Since the Estate cannot point to any appropriate deduction provision covered by § 691(b), the Court finds that the Estate cannot avoid § 642(g)'s bar on double deductions. Accordingly,

the Court grants the government's motion as to Count III.

## IV.  CONCLUSION

For the above reasons, it is

**ADJUDGED** that

(1)  Plaintiff's Motion for Summary Judgment on Count I **(D.E. No. 21)**, filed on **August 31, 2012**, is GRANTED.

(2)  Defendant's Motion for Summary Judgment on Count III **(D.E. No. 36)**, filed on **October 16, 2012**, is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 26 day of August, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record