UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20038-CIV-MORENO

ANNE BATCHELOR-ROBJOHNS, DANIEL J.
FERRARESI and FATHER PATRICK O'NEILL
as Co-Personal Representatives of the ESTATE
OF GEORGE BATCHELOR,

      Plaintiffs,

vs.

UNITED STATES OF AMERICA,

      Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court here, after a bench trial, resolves whether the Estate of George E. Bachelor ("the Estate") may be entitled to a refund of payments made by the Estate to the Internal Revenue Service ("IRS"). The Court concludes, pursuant to Rule 52 of the Federal Rule of Civil Procedure, that the IRS erroneously determined that Mr. Batchelor failed to report $5.8 million in income on his personal tax return for 2000, and the challenges that the United States makes to this refund claim are barred by *res judicata*. *See* Fed. R. Civ. P. 52. The Estate is thereby entitled to the refund of taxes incorrectly assessed against it for 2000, with no offsets, with the addition of interest from the date the Estate paid the assessments until the date the United States repays the Estate.

I.  **Factual Background**

The following paragraphs set forth the factual findings the Court has made based on evidence introduced at trial and the joint stipulations of fact set forth by the parties. At the outset, the Court notes that the parties have stipulated to most of the factual record.

At issue in this case are the actions and property of George E. Batchelor, a resident of Miami-Dade County, Florida, who died on July 29, 2002. The Estate of George E. Batchelor is under administration in the Probate Division of the Circuit Court in and for Miami-Dade County, Florida. Plaintiffs Anne (Sandy) Batchelor-Robjohns, Daniel J. Ferraresi, and Father Patrick O'Neill are the co-personal representatives of the Estate of George Batchelor. Mr. Batchelor was the sole shareholder of International Air Leases, an aviation company that bought, sold, and leased aircraft and aircraft engines, until February 10, 1999, when he relinquished all of his shareholdings in International Air Leases to International Air Leases of Puerto Rico for the total consideration of $502,181,641. Included in the consideration was a Note from International Air Leases of Puerto Rico for $150,000,000, which provided for an interest rate of 7%.

The issues in this case concern the Promissory Note. Within the Note, the parties entered into an Option Asset Purchase Agreement—executed in connection with an Amended Stock Purchase Agreement on February 10, 1999—wherein International Air Leases of Puerto Rico agreed that Mr. Batchelor would have an option to purchase two International Air Leases aircrafts, three of International Air Leases' joint ventures, and eight International Air Leases engines. Under the Option Agreement, Mr. Batchelor would credit the balance owed on the Note against the parties' agreed-upon value of each asset Mr. Batchelor decided to buy.

Between February 10, 1999 and August 28, 2000, Mr. Batchelor was paid a total of $155,846,116 with money, credits for items he received, or the Option Assets, all of which he credited against the Note. Mr. Batchelor received $131,165,733 in 1999 and $24,680,383 in 2000. He reported the entire amount received in 1999 on the Installment Sale form of his 1999 tax return, and did not report any of the income as interest. The entire 1999 amount was thus taxed at the capital gains rate. He reported the $ 24,680,383 received in 2000 as two types of income on his 2000 return: $18,834,267 as installment sales income, treated as capital gains income, and $5,846,116 as interest income on his Schedule B, taxed at ordinary income rates. In 2000, the United States and Mr. Batchelor first litigated the issue of how much the International Air Leases stock and assets were worth and how much Mr. Batchelor received from the sale in order to determine whether Mr. Batchelor was a transferee and liable for International Air Leases' unpaid taxes. *See United States v. Batchelor-Robjohns*, No. 03-20164-Civ-Ungaro (S.D. Fla.) (*Batchelor I*). Also litigated was the value of the Option Assets, which were transferred to Mr. Batchelor as partial payment for the Note in 1999. Judge Ungaro entered a final judgment on the merits in summary judgment.

In the midst of *Batchelor I*, the IRS also examined Mr. Batchelor's personal tax returns for 1999 and 2000. The IRS asked the Estate to provide evidence of all payments making up the $502 million in income reported on the Installment Sale forms of those two years. The Estate provided more than 1000 pages, constituting the agreements, the checks and wire transfers, title transfers, bank records, and internal memos. The document package also included the Promissory Note and the Settlement Agreement relating to the transaction, dated in April 2000. All the payment information provided added up to $508 million. The IRS then compared the total

income received to the installment sale income reported, mistakenly failing to recognize that some of the income was reported as interest, which installment sale rules require to be reported on Schedule B of the return rather than on the Installment Sale form. *See Lerch v. C.I.R.*, 53 T.C.M. 1101 (T.C. 1987) (when reporting installment sales of property, a taxpayer uses Schedule B to report interest income).

As a result of the erroneously perceived difference in income reported, the IRS decided that $5.8 million received in 2000 was not reported on the 2000 return. The IRS upwardly adjusted Mr. Batchelor's reported income by that amount, adding it to the installment sale form, and taxed it at capital gains rates, assessing an additional $584,637, plus interest. The Estate then pointed the IRS to Schedule B of the 2000 return, where the amount was reported as interest income. The IRS ultimately rejected this explanation, stating that it had insufficient documentary evidence of the payments. The Estate paid the assessment and entered the appeals process with the IRS. That was unsuccessful, and the Estate sued for refund.

In this case, the Government has stipulated that the amount received by the Estate in 2000 was indeed reported, but it contests whether the Estate is entitled to a refund. Its theory in this action is that it may offset a recalculation of Mr. Batchelor's 1999 taxes against any refund that is due for its erroneous 2000 tax year assessment. According to the Government, it should be permitted to treat at least $7.6 million of the $155,846,116 paid on the $150 million dollar Note as interest, with $6.4 million of that reported in 1999.

The Government's assertion about interest rests on a litigation position that Mr. Batchelor took when disputes arose with Anthony Tirri, the man who, through his company International Air Leases of Puerto Rico, bought International Air Leases in February 1999. Mr. Batchelor

claimed a breach of the terms of their sale agreement almost immediately after closing, claiming that February rent had not been paid. He continued to assert breaches and Mr. Tirri continued to deny them on a constant basis from April 1999 to April 2000. Eventually, Mr. Batchelor pursued legal remedies, seeking to have his wholly owned company, Grand Building Corp., evict International Air Leases from the building it leased based on alleged breaches of the lease, the Note, and the security agreements relating to collateral for the Note.

In June 1999, Mr. Batchelor declared that default interest was due. The Note provided for interest at the rate of 18% or the highest rate allowed by law in the event of a default. Mr. Tirri was advised that interest accrued at 25%, the highest rate allowed by Florida law, and that the balance of principal on the Note was accelerated. In addition, in November 1999, Mr. Bachelor demanded that Mr.Tirri move International Air Leases out of the building and that his option to buy the building had been canceled. International Air Leases did not move out, did not pay off the accelerated balance, sent a letter and check to try to exercise its option and disputed the application of default interest. When Grand Building sued to evict International Air Leases, International Air Leases counterclaimed. Among its complaints and defenses were complaints about lack of quiet enjoyment, tortious interference, and theft or misuse of trade secrets.

In February 2000, the Note balance was due on its original terms. It was not paid, but Mr. Tirri asked for calculations. Mr. Batchelor's financial officer prepared a schedule applying payments to accrued interest first, then reducing the balance as provided in the Note. In accordance with Mr. Batchelor's litigation position, the financial officer accrued interest at 7% from February 10, 1999 to June 18, 1999 and then accrued interest at 25% from June 18 to the date of the letter. The schedule showed that more than $12 million was still owed on the balance.

Mr. Tirri instead asserted that the parties were $8 million apart. The parties reached a settlement prior to their trial date in April 2000. Mr. Batchelor, Mr. Tirri, and International Air Leases of Puerto Rico were parties to the settlement action, which settled all existing claims of breach by either party and resolved the disputes about the amount due under the Note. Rather than setting the amount due (a) at $12 million, as Mr. Batchelor had demanded under a 25% interest rate, (b) at $8 million, which would be about the right principal amount if 7% interest had been accrued during the life of the Note, or (c) at $4 million, which Mr. Tirri represented was due based on his claim that the parties were $8 million apart, the parties compromised and agreed to settle all disputes for a Settlement Amount of $9.9 million. Once the Settlement Amount and 7% accrued interest from the date of settlement until the date of payment was paid, Mr. Batchelor deemed the Note satisfied and released all collateral.

## II. Standard of Review and Burden of Proof

The Court must determine the value and character of the items in dispute *de novo*, and neither the Court nor the Government is bound by the positions the IRS took at the administrative level. *See, e.g., R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991); *Rubenstein v. United States*, 826 F. Supp. 448, 453 (S.D. Fla. 1993).

As a threshold matter, the Court finds that the United States bears the burden of proving that the Estate owes the taxes in question. Title 26 U.S.C. § 7491 shifts the burden of proof to the government if the taxpayer introduces credible evidence on any fact relevant to the determination and if the taxpayer cooperated with reasonable requests for information, documents, and meetings from the IRS. *See* 26 U.S.C. § 7491. The Estate has introduced credible evidence

demonstrating that it overpaid its taxes for the 2000 tax year. Moreover, the Estate has demonstrated that it cooperated with all reasonable requests for documents, information, and meetings by the IRS. *See* 26 C.F.R. § 1.6001-1.

### III.    Analysis

The Court here resolves the remaining Count of Plaintiff's Complaint, Count II, regarding the Estate's entitlement to a refund of payments made by the Estate when the IRS erroneously assessed Mr. Batchelor's personal tax return for 2000. The parties have stipulated that Mr. Batchelor reported total income received in the year 2000 in connection with the IAL transaction and the Note. The basis of this contest is the Government's claim that it can offset a recalculation of Mr. Batchelor's 1999 taxes against any 2000 refund that is due. The United States proposes that an offset against the year 2000 refund should be available due to a mischaracterization of income on Mr. Bachelor's 1999 return. In 1999, Mr. Bachelor reported the income in question as capital gains income on his return's Installment Sale form and a portion should have been treated as interest and taxed as ordinary income. However, the Court finds that the doctrine of *res judicata* dictates that the Government is estopped from offsetting a recalculation of Mr. Batchelor's 1999 taxes against any refund that is due. Because the International Air Leases sale transaction was litigated in the Estate's favor in *Batchelor I*, the United States is foreclosed by *res judicata* from re-litigating it here.

####      A.    The Estate's Entitlement to a Refund for Tax Year 2000

*Res judicata*, or claim preclusion, prevents a plaintiff from re-litigating claims already

decided on the merits in an earlier proceeding. *Fleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir.1998). Both the claims actually brought and claims that could have been brought are barred when *res judicata* applies. *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1501 (11th Cir. 1984) ("*res judicata* bars a second suit involving the same parties and same cause of action on all matters that were part of the first suit *and all issues that could have been litigated*. The doctrine of collateral estoppel precludes relitigation only of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action." (emphasis in original, citations omitted); *see also Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992). The doctrine applies when four elements are present: (1) the initial action ended with a final judgment on the merits; (2) the judgment was rendered by a court of competent jurisdiction, (3) the parties in both proceedings are the same or in privity; and (4) the prior cause of action was the same as the current cause of action. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).

All four of these elements exist in this case. First, the United States and Mr. Batchelor's Estate previously litigated an action based on how much the International Air Leases' stock and assets were worth and how much Mr. Batchelor received from the sale. *United States v. Batchelor-Robjohns*, Case No. 03-20164-Civ-Ungaro (S.D. Fla. 2003) (*Batchelor I*). Because *Batchelor I* was dismissed by summary judgment, it serves as a final judgment on the merits. *Id.*; *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) (summary judgment is a final judgment "on the merits"). In addition, there is no question that this Court was one of "competent jurisdiction" in that action based on federal question jurisdiction, as subject matter jurisdiction was conferred upon the Court by 28 U.S.C. § 1346(a)(1). Thus, the first and second prongs of the test

have been satisfied. The third element of *res judicata* requires that the parties in the two actions be either the same or in privity with each other. The parties here are the same. *NAACP v. Hunt, et al.*, 891 F.2d 1555, 1560 (11th Cir. 1990).

Finally, the fourth element of the doctrine of collateral estoppel dictates that *res judicata* apply only if a suit involves the same cause of action as a prior litigated matter. *Hunt*, 891 F.2d at 1560. The determination of whether a litigant has asserted the same cause of action in two proceedings depends upon whether "the primary right and duty are the same in both cases." *Fleming*, 142 F.3d at 1356. The doctrine bars all legal theories and claims arising from the same nucleus of operative fact. *Id.* (quoting *Manning*, 953 F.2d at 1358). Thus, courts examine the factual issues to be resolved in an action and those that arose in prior related, litigated matters and "compare the substance of the actions, not their form." *I.A. Durbin*, 793 F.2d at 1549.

Here, all claims by the United States relating to income from the International Air Leases transaction arise out of the same operative facts as those of *Batchelor I*. *See In re Piper Aircraft Corp.*, 244 F.3d 1289. Both cases arise from the transaction in which Mr. Batchelor received payments as consideration for the sale of International Air Leases. Specifically, the offset claimed by the United States here relates to the income that Mr. Batchelor received in 1999 or 2000 in the form of payments for his sale of International Air Leases. Although the International Air Leases sale closed on February 10, 1999, International Air Leases of Puerto Rico gave Mr. Batchelor a Promissory Note as partial payment, which required payments to be made over the next year. Each payment on the Note was thus a portion of the total payment for International Air Leases. This Court finds that those payments were part of the same series of transactions as the Government's transferee liability claim in *Batchelor I*, which sought to assess liability against Mr. Batchelor's Estate in

connection with income that he received as payment for the Note (the Option Assets were also part of the payments made to Mr. Batchelor by International Air Leases of Puerto Rico in satisfaction of the Note).

It cannot be contested that a transaction that effectuates a previous transaction is necessarily part of the same nucleus of operative facts and the same series of related transactions. *See. e.g., I.A. Durbin*, 793 F.2d at 1549. Here, the payments made to Mr. Batchelor under the Note in both 1999 and 2000 effectuated the agreement between Mr. Batchelor and International Air Leases of Puerto Rico. Notably, part of what the United States was required to demonstrate in order to prevail on its transferee liability claim in *Batchelor I* was the value of the excess consideration allegedly transferred to Mr. Batchelor by International Air Leases of Puerto Rico as payment for International Air Leases. These payments were therefore an integral part of the Government's claim in *Batchelor I*. This demonstration could not be made in that case without proving the total amount of payments to Mr. Batchelor, including the payments on the Note, and the United States accordingly presented evidence in *Batchelor I* to support the assessment of personal income taxes on the transaction. When granting summary judgment for the Estate, this Court affirmed this demonstration, stating, "Over the course of [a] year and a half, Batchelor received the balance on the Promissory Note via direct payments from third parties and the sale of various aircraft and aircraft parts. Batchelor deemed the Promissory Note fully satisfied in August 2000." *See* Order Granting Summary Judgment for the Estate in *Batchelor I*, D.E. 314 at page 9 in *U.S. v. Anne (Sandy) Batchelor-Robjohns*, Case No. 03-20164-Ungaro.

Here, the United States' offset claim ultimately arises directly from the same nucleus of operative fact as the matter of *Batchelor I*. Because any claim that the United States had against the

Estate for the mischaracterization of income in 1999 or 2000 arose when the Estate filed its year 1999 income tax return in October 2000 and its 2000 return in October 2001, they were in existence and could have been brought in *Batchelor I*, wherein the United States had until April 2004 to add claims. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999). All claims relating to income from the International Air Leases sale transaction should have been litigated in *Batchelor I* and the United States is foreclosed by *res judicata* from attempting any further relitigation here, so its setoff defense is barred in this action. *Id.* at 1237.

To the extent that the Government asserts that Judge Ungaro never decided any issues relating to the Note or to tax characterizations and this suit is thereby outside the purview of *res judicata*, the Government confuses the narrow doctrine of issue preclusion with the broad doctrine of claim preclusion. It is irrelevant that Judge Ungaro did not make factual findings regarding the characterization of the income regarding the International Air Leases transaction in *Batchelor I* because the instant claim arose out of the same nucleus of operative facts–that is, the same transaction–as the *Batchelor I* claim. *See In re Piper Aircraft Corp.*, 244 F.3d at 1289. The doctrine of claim preclusion expands the preclusive elements of *res judicata* "not only as to all claims respondents actually raised, but also as to all claims that could have been raised" as to a matter in a prior case. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 404 (1981). Because all payments received by Mr. Batchelor on the Note are part and parcel of the same transaction, whether received in 1999 or 2000 as well as whether received in accordance with the Stock Purchase Agreement, the terms of the Note, or after settlement of a suit for breach of the Note and related agreements, any effort of the United States to collect or retain additional taxes relating to income received in connection with the International Air Leases transaction is now barred by the doctrine

of *res judicata*.

The Court notes that the "barring" aspect of *res judicata* does not also bar the Plaintiff's refund claim here because the refund claim was not in existence at the time of filing of *Batchelor I*. A claim is barred by *res judicata* if it was in existence when the original claim on the transaction was filed, which for *Batchelor I* was January 28, 2003. *See Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1377 (11th Cir. 2011) (claims that "could have been brought" are claims in existence at the time the original complaint is filed); *see also Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992). After judgment was entered in *Batchelor I*, the IRS continued to pursue claims and assess them against the Estate, which timely paid the assessment on July 21, 2005. This refund claim naturally only arose after the IRS assessed it and the Estate paid it and sought a refund. This refund claim did arise by the advent of *Batchelor III*, and could have been barred by *res judicata* by that case had its matter been decided on the merits, but *Batchelor III* was not concluded in final judgment on the merits but by stipulated dismissal of the parties. Accordingly, this case must be the final word on the refund regarding the International Air Leases transaction.

B. The United States' Claim for Recoupment is Barred

The Government also claims that it is entitled to offset underpaid taxes from the 1999 tax year against the 2000 refund under the equitable theory of recoupment. The offset that the Government attempts to assert here once again arises from the value and characterization of payments under the Promissory Note given to Mr. Batchelor as consideration for the International Air Leases sale. To determine the portion to be recharacterized as interest income and taxed at

ordinary income rates, the Court would have to revisit the 1999 income in connection with the International Air Leases transaction and Note. This offset is barred by a statute of limitations. To avoid this statute of limitations bar, the United States here invokes the doctrine of equitable recoupment. *See Bull v. United States*, 295 U.S. 247 (1935). The Court finds, however, that the doctrine of recoupment fails to prevail against the doctrine of *res judicata*. *See Lewis v. Reynolds*, 284 U.S. 281 (1932).

Recoupment is an equitable doctrine applied in the tax context to allow either the taxpayer or the Government to avoid the harsh consequences of the statute of limitations in very limited circumstances. It provides no affirmative relief, only setoffs, and only in the context of the statute of limitations. *See O'Brien v. United States*, 766 F.2d 1038, 1048-1050 (7th Cir. 1985). If a taxpayer seeks to recover because of an error made to his disadvantage in one year, the Government may require him to give up any related or unrelated advantageous errors in the same year, even though the Government could not otherwise assess deficiencies as to those errors due to the expiration of a statute of limitations. *See Lewis,* 284 U.S. at 284 (refund claim allows redetermination of entire tax liability in same tax year); *see also Allen v. United States*, 51 F.3d 1012 (11th Cir. 1995) (applying *Lewis* to allow IRS right to re-audit every aspect of year's return on which refund is sought, including different penalties, even if statute of limitations has expired).

If a taxpayer, or the Government, seeks to recover for one tax year by recharacterizing a status or transaction relating to that year in a manner inconsistent with the position taken in a prior year on the same status or transaction, that prior, intertwined year may be reopened only in connection with that specific transaction to ensure that the taxpayer, or the Government, does not reap an advantage from treating the transaction or status inconsistently in the two (or more) years.

*See R.H. Donnelly Corp.*, 641 F.3d at 73 (a credit used in three successive tax years could be reexamined and offset against refund due on taxpayer's recharacterization in third year, even though statute of limitations had run on first two years). Opening the prior years as to which the statute has run does not allow a complete reopening of all tax issues in those prior years, but only those issues intertwined with the demand for refund. *Id.*

However, recoupment is an equitable exception *only* as to a statute of limitations: it is not an exception to any other limitation on remedies or rights. *See generally United States v. Dalm*, 494 U.S. 596 (1990) (equitable recoupment cannot be used to avoid a limitation on jurisdiction over a refund claim); *Parker v. United States*, 110 F.3d 678 (9th Cir. 1997) (recoupment not available to assert inconsistent treatment of two different estates' taxes with regard to same corpus to avoid the requirement that a single taxpayer be subject to inconsistent tax treatment). In regards to this case, therefore, recoupment cannot be used to avoid the doctrine of *res judicata*. Indeed, allowing recoupment when claims are closed by *res judicata* would undermine the very purpose of *res judicata*–to put an end to disputes about a single transaction. *See generally Parker,* 110 F.3d at 684 (refusing to expand reach of recoupment because it would risk "all but intolerable: circumstances of having a tax system under which there would never come a day of final settlement"(citations omitted)). The doctrine of *res judicata* serves to secure necessitated finality to litigation and prevents harassment of parties and the waste of judicial resources through multiplicitous law suits. While this Court avoids the mechanical application of common law doctrine in the face of manifest injustice, this Court does not find here that "manifest injustice" results from its application or that "public policy" so demands an exception to the finality rule. *See Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1504 (11th Cir. 1984) (quoting *Moch v. E. Baton Rouge Parish Sch. Bd.*, 548 F.2d 594,

598 (5th Cir. 1977); *see also Hernandez v. City of Lafayette*, 699 F.2d 734, 737 (5th Cir. 1983) (avoidance of *res judicata* application must be in the face of circumstances that are "significant" and or due to the creation of "new legal conditions."). Ultimately, recoupment is not an expansive exception to finality, and it cannot be used here to avoid the consequences of *res judicata*.

### IV. Conclusion

The Estate is entitled to the refund of taxes incorrectly assessed against it for the 2000 tax year, with the addition of interest from the date the Estate paid the assessments until the date the United States repays the Estate. The Government is not entitled to offset any claims or taxes against those refunds because any such offset claims or taxes are barred as a matter of law by the doctrine of *res judicata*.

DONE AND ORDERED in chambers at Miami, Florida, this 13th day of November, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record